**AUSTIN DRILLING COMPANY,
Mid–Continent Casualty
Company, Petitioners,**

v.

**Blaine E. RICE, Workers' Compensation
Court, Respondents.**

**No. 54297.**

Court of Appeals of Oklahoma,
Division No. 1.

May 27, 1980.

Rehearing Denied July 1, 1980.

Certiorari Denied Sept. 8, 1980.

Released for Publication by Order of
Court of Appeals Sept. 16, 1980.

---

Harlan S. Pinkerton, Jr., Tulsa, for petitioners.

Russell, Payne & Farber by J. Clark Russell, Oklahoma City, for respondent.

ROMANG, Judge:

Claimant, Blaine E. Rice, was a member of a drilling crew working on an oil drilling rig owned and operated by the Austin Drilling Company, hereinafter Austin.

Claimant was paid $6.40 per hour as wages and $11.00 per day as travel pay. He lived between 40 and 50 miles from the drilling site.

As was his custom, claimant drove his own car to and from work. On the date of injury, February 26, 1979, claimant was driving to work on a public road when he had an automobile accident and therein sustained personal injuries on which his claim for compensation is based. The nature and extent of the injuries are not questioned in this appeal.

The Order of the Workers' Compensation Court, affirmed en banc, holds that said injuries arose out of and in the course of claimant's employment.

The decisive issue in this appeal is whether injuries sustained in an automobile accident on a public road on the way to work, can be construed as injuries arising out of and in the course of employment under 85 O.S. 1971, § 11.

This Court will take judicial notice of the fact that members of oil well drilling crews usually live long distances from the drilling sites which change locations every few weeks, and that travel of considerable distances to get to and from work is an integral part of that type of employment.

The case of *Norvill v. Paul Hardeman, Inc.*, Okl., 377 P.2d 208 (1962), is cited and quoted by Austin as being the only case in Oklahoma specifically on all points. In the *Norvill* opinion we note the following:

On February 2, 1961, at approximately 6:45 P.M. claimant was riding to his home in Hobart, Oklahoma, in an automobile owned and driven by Cecil Driggers, a fellow employee. Approximately 2.6 miles west of Hobart, Oklahoma, the car in which he was riding collided with one driven by Homer Cribbs. No one was hurt in this accident and claimant and Driggers had sent word to the highway patrol and were waiting to report the accident. While waiting they decided to smoke and found themselves without a match. Employee crossed the road to obtain a match from Cribbs, and while returning he was struck by another automobile sustaining the injury involved in this proceeding.

\* \* \* \* \* \*

Neither does the fact that claimant was allowed $2.00 per day designated as travel pay constitute an agreement, express or implied, to transport the employee to or from the place of employment. He was not using the money thus obtained for expenses of a method of conveyance used by him or any one else at the direction of the employer. There is no evidence that there was an agreement implied or otherwise for the employer to furnish a method of conveyance.

Two distinctions exist between *Norvill* and the present case, namely, (1) *Norvill* was not injured in the accident on the way home from work but later, on a mission of his own, and (2) he was not using the travel pay as expenses for a method of conveyance.

In the present case, claimant, Rice, testified in pertinent part:

Q So how far did you have to travel each day to go to work?

A Forty to fifty miles.

\* \* \* \* \* \*

Q All right. At the time of this accident, what was your schedule of payment? How were you paid by Austin Drilling Company?

A Six forty per hour and $11.00 per day.

Q What was the $11.00 a day for?

A Car expenses—driving to and from work, as I understood it.

Q Transportation expense?

A Yes, sir.

\* \* \* \* \* \*

Q Did you drive to and from work every day?

A Yes, sir; seven days a week.

Q You weren't in any type of car pool—

A No.

\* \* \* \* \* \*

Q Who directly hired you on behalf of Austin Drilling Company?

A Tony Barger.

Q And he was your driller; is that correct?

A Yes, sir.

Q When he hired you, I take it that he told you that you would be paid six forty a day plus $11.00 expenses; is that your understanding?

A $11.00 a day for driving, yeah.

Q Well, did he specifically say $11.00 a day for driving?

A He said driving pay: $11.00 a day.

The driller, Barger, testified on cross-examination as follows:

Q And you did testify, on direct examination, that part—some part—of that $11.00 is for the purpose and use and cost of transportation to and from because of the odd number of miles to and from a rig?

A Yes, I did.

Q And this money was paid to Mr. Rice as part of his employment?

A Yes.

Jimmy Lynn Austin, vice-president of Austin Drilling Company, testified on direct examination:

Q We have already admitted that the pay check that the employee receives has the legend on the stub of transportation expense. Is that true?

A Yes, sir.

Q And can you tell us the reason that the phrase or term transportation expense is employed or used?

A Rather than put miscellaneous expense where it would cover any other clothing items—gloves, shoes, hard hats—which they would buy theirself, this phrase was put in.

Q All right, sir. Is it true that no deductions are made from this $11.00?

A That's correct.

Q And is it true that it is included with the hourly rate of pay times the hours worked in one particular check each pay period?

A Yes, sir.

Q This might be leading, but is it or is it not true that the denomination of transportation expense, though, does appear as a separate item over and above the hourly pay?

A Yes, sir.

Q And, of course, deductions are made from the hourly pay?

A Yes, sir.

And on cross–examination, Mr. Austin further testified:

Q And is that a standard type of check stub for the payment of hours that he worked for Austin Drilling and Austin–Dunham?

A Yes, sir.

Q I notice on there that there are hourly wages plus overtime rate with income tax deductions, and everything. Everything is shown on there; is that correct?

A Yes, sir.

Q Down at the bottom, it says—what: Car expense—

A Yes, sir.

Q —$154.00?

A Yes, sir.

Claimant, Rice, was recalled to the stand, and further testified:

Q Well, but at the time you were hired, what was your understanding that this $11.00 a day was to be used for?

A My purpose would have been to understand that it would have been for gasoline to and from work or repair the car—whatever.

Q As indicated on here as car expense?

A Yes, sir.

In *Novak v. McAlister*, Okl., 301 P.2d 234 (1956), the syllabus states:

An injury does not arise out of the employment within the meaning of the Workmen's Compensation Law of this state, unless it results from a risk reasonably incident to the employment, and unless there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.

In *Charles H. Stanford, Inc. v. Gregory*, Okl., 303 P.2d 1112 (1956), Gregory lived in Oklahoma City but worked in Texas. The employer was engaged in building houses in Wichita Falls, Texas, and claimant was a sheet rock worker on those houses. The opinion of the court therein reads as follows:

Claimant had his own transportation which consisted of an automobile, pulling a two wheel trailer, on which he carried his tools and a stove. . . . After finishing his work on the Thursday in question, he started back to Oklahoma City where he lived. When he had driven to a point near Waurika, Oklahoma, a tire on the trailer blew out. He disconnected the trailer and left it at Waurika. On Monday morning, February 20, 1956, in answer to a telephone call from Gatlin to his wife, he left Oklahoma City for Wichita Falls and stopped at Waurika to pick up the trailer. While airing the tire on the trailer, he sustained the accidental injury resulting in the disability for which the award was made.

\* \* \* \* \* \*

There is competent evidence reasonably tending to support the finding that claimant was to be paid for the time consumed in traveling to and from Oklahoma City and that therefore the accidental injury arose out of and in the course of the employment.

And in the *Gregory* syllabus, the court said:

The question of whether an injury arose out of and in the course of employ-

ment is one of fact to be determined by the Industrial Commission under the circumstances of each particular case, and, when there is any testimony reasonably tending to support its finding it will not be disturbed on an application to vacate the award.

In *Fluor Engineers & Contractors, Inc. v. Kessler*, Okl., 561 P.2d 72 (1977), the opinion reads:

The award, affirmed en banc, was based on injuries sustained by claimant in a highway accident that occurred while claimant traveled from his home in Norman to Woodward, Oklahoma, to report for his first day on the job as an employee of Fluor.

\* \* \* \* \* \*

The first prerequisite to jurisdiction of the State Industrial Court to award compensation is a showing that claimant was, at the time of his injury, an employee of the respondent.

\* \* \* \* \* \*

The general rule is that an employer is not responsible for injuries sustained by an employee in traveling to his place of work. Exceptions to this rule may be found if the employer is furnishing the transportation or paying traveling expenses. Highway accidents may also be covered if the employment requires the claimant in the performance of his work to be upon the highways.

Compensation was denied in *Kessler* because the employer–employee relationship had not begun, but the principles of law therein expressed are applicable to the instant case.

■ Here, the record leaves no doubt that the nature of oil drilling work makes it necessary for claimant to drive a long distance to and from work. Such driving was a risk reasonably incident to his employment. The $11.00 per day paid for his transportation expenses and time consumed in traveling to and from work. We hold that there was a causal connection between the conditions under which the work was required to be performed and the resulting injury. *Novak v. McAlister, supra.*

■ Austin's remaining contention is that the trial court did not make specific findings of ultimate facts to the issues as well as conclusions of law upon which its order is made.

In *Creswell v. Jones Drilling Company*, Okl., 408 P.2d 297 (1965), the Supreme Court held in the syllabus:

An order of the State Industrial Court which contains a specific finding upon the only issue properly before the court cannot be said to be too indefinite and uncertain for judicial interpretation.

Here, since the Order contains a specific finding upon the only issue properly before this Court, namely, whether the injuries arose out of and in the course of claimant's employment, it cannot be said to be too vague, indefinite and uncertain for judicial interpretation.

The Order of the Workers' Compensation Court is hereby sustained.

ORDER SUSTAINED.

REYNOLDS, P. J., and BOX, J., concur.