PRO–BENEFIT STAFFING, INC., Petitioner,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH and Richard J. Riddle, Respondents.

No. 880595–CA.

Court of Appeals of Utah.

June 2, 1989.

---

Stephen W. Cook, Midvale, for petitioner.

R. Paul Van Dam and Winston M. Faux, Salt Lake City, for respondents.

Before BILLINGS, GARFF and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

This is an appeal from the Board of Review of the Industrial Commission's ("Board") decision awarding Richard J. Riddle unemployment compensation benefits. The Board concluded Mr. Riddle was not discharged from his employment for disqualifying conduct under Utah Code Ann. § 35–4–5(b)(1) (1988), and was therefore entitled to benefits under the Utah Employment Security Act. We affirm the Board's determination.

## FACTS

We review only those facts relevant to the issues presented. Mr. Riddle was employed at Pro–Benefit Staffing, Inc. as an accountant from July 12, 1987, until his discharge on February 4, 1988. Mr. Riddle's primary responsibility was managing accounts receivable which included crediting customer accounts and making bank deposits. On or about January 25, 1988, Master Services, one of Pro–Benefit's clients, contacted Pro–Benefit to report that a check Master Services had submitted for the balance of a December invoice had been returned to them by Mr. Riddle even though Master Services's account had been credited for the invoice amount.

It was later determined that Mr. Riddle had credited a check issued by another client, Chief Fire Protection, in the amount of $6,793.70 to Master Services's account. Mr. Riddle claimed he mistakenly credited the wrong account. He stated that clients frequently submitted payments without attaching the corresponding invoices, and he believed such was the case with the Chief

Fire Protection check. Mr. Riddle further stated that checks and invoices occasionally became separated which he believed happened with the Master Services check and invoice. Consequently, Mr. Riddle testified that when he ultimately discovered the payment from Master Services, his records reflected a zero balance because he had already mistakenly credited the Master Service's account with the check issued by Chief Fire Protection. Thus, believing the check from Master Services was a duplicate payment, Mr. Riddle returned it to Master Services.

After learning of the incident, Pro–Benefit audited its records but no other mistakes or discrepancies in Mr. Riddle's work were discovered. Nonetheless, Mr. Riddle was suspended from his position on January 26, 1988, and subsequently terminated on February 4, 1988. Pro–Benefit stated the basis for Mr. Riddle's discharge was "errors and discrepancies found in ... handling of the Master Services account."

The Board upheld an initial determination by the Department of Employment Security awarding Mr. Riddle unemployment benefits. In its decision, the Board affirmed the appeal referee's determination that Mr. Riddle was not terminated from his employment for "just cause" within the meaning of Utah Code Ann. § 35–4–5(b)(1) (1988). The Board also denied Pro–Benefit's request to remand the case to the appeal referee to take additional testimony. In this appeal Pro–Benefit raises three issues claiming: 1) The Board erred in concluding that Mr. Riddle was not terminated for "just cause," 2) the appeal referee erred in excluding hearsay testimony, and 3) the Board abused its discretion in refusing to remand the case for additional testimony.

## STANDARDS OF REVIEW UNDER THE UTAH ADMINISTRATIVE PROCEDURES ACT

These proceedings were commenced after January 1, 1988, and therefore our review is governed by the Utah Administrative Procedures Act ("UAPA"), Utah Code Ann. §§ 63–46b–1 to –22 (1988 Supp.).[1]

It is difficult to determine precisely the challenges raised by Pro–Benefit on appeal. Pro–Benefit does not appear to dispute the Board's findings of operative facts. Moreover, even if Pro–Benefit is claiming the Board's findings of fact are not supported by substantial evidence, *see Grace Drilling Co. v. Board of Review*, 776 P.2d 63, (Utah Ct.App.1989), it has failed to meet its burden of marshalling the evidence, and therefore, we treat the Board's findings of operative facts as conclusive. *See, e.g., Cornish Town v. Koller*, 758 P.2d 919, 922 (Utah 1988); *Sampson v. Richins*, 770 P.2d 998, 1002 (Utah Ct.App.1989).

Pro–Benefit does assert the Board erred in concluding the operative facts and the reasonable inferences drawn therefrom did not demonstrate that Mr. Riddle's conduct was "culpable" and therefore, his discharge was not for "just cause" within the meaning of Utah's Employment Security Act. Whether an employee was terminated for "just cause" is a mixed question of law and fact, and thus on appeal we must determine whether the UAPA alters the standard for reviewing such a determination. No reported Utah case has directly ad-

---

**1.** Section 63–46b–22(1) provides that the UAPA applies to "all agency adjudicative proceedings commenced by or before an agency on and after January 1, 1988. . . ." Additionally, § 63–46b–1(1)(b) provides, with our emphasis, that the UAPA governs judicial review of agency actions "[e]xcept as set forth in Subsection (2), and *except as otherwise provided by a statute superseding provisions of [UAPA] by explicit reference to [UAPA]. . . .*" The Utah Employment Security Act has no such superseding provisions concerning judicial review, and therefore our review is governed by § 63–46b–16(4). We also note that the UAPA is substantially similar to the Uniform Model State Administrative Procedure Act (1981), 14 U.L.A. 69 (1988) ("MSAPA"). *See Utah A.P.A. 1988–89*, comments of the Utah Administrative Law Advisory Committee at 10 (April 25, 1988). Specifically, § 63–46b–16(4)(a)–(h) "are patterned after the comparable provisions in the MSAPA (Sections 5–116(c)(1) through 5–116(c)(8))." *Utah A.P.A. 1988–89, supra*, at 15.

dressed this issue therefore, the issue is one of first impression.

## Mixed Questions of Law and Fact Under the UAPA

Prior to the UAPA, our courts uniformly applied an intermediate standard of reasonableness and rationality in reviewing mixed questions of law and fact, otherwise referred to as the application of "basic facts ... to the legal rules governing the case." *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 610 (Utah 1983).[2] Under the intermediate standard, the Board's conclusions must be reasonable and rational "as measured against the language and purpose of the governing legislation." *Clearfield City v. Department of Employment Sec.*, 663 P.2d 440, 444 (Utah 1983).

Under the UAPA, our review of mixed questions of law and fact is governed by Utah Code Ann. § 63–46b–16(4)(d) (1988). This section provides that we shall grant relief if an "agency has erroneously interpreted or *applied* the law." *Id.* (emphasis added). Section 63–46b–16(4)(d) is identical to its Model State Administrative Procedures Act counterpart § 5–116(c)(4) [3] and the comments to § 5–116(c)(4) provide that:

Paragraph (c)(4) includes two distinct matters—interpretation and application of the law.... [W]ith regard to the agency's *application* of the law to specific situations, the enabling statute normally confers some discretion upon the agency. Accordingly, a court should find reversible error in the agency's application of the law only if the agency has improperly exercised its discretion....[4]

We conclude our existing intermediate standard for reviewing the Board's determinations is consistent with the approach set forth above, and therefore we will continue to embrace the analysis described in *Administrative Services* for reviewing mixed questions of law and fact. Accordingly, under Utah Code Ann. § 63–46b–16(4)(d), we will not disturb the Board's application of its factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality.[5]

With the foregoing principles in mind, we address Pro–Benefit's contentions that Mr. Riddle was discharged for "just cause" within the meaning of Utah's Employment Security Act.

## TERMINATION FOR "JUST CAUSE"

Pro–Benefit bears the burden of establishing that Mr. Riddle was terminated for "just cause." *See, e.g., Stegen v. Department of Employment Sec.*, 751 P.2d 1160, 1163 (Utah Ct.App.1988).

In a discharge, the employer initiates the separation and, as such, is the primary source of information with regard to the reasons for the dismissal. The employer has the burden of proof which is the responsibility to establish the facts resulting in the discharge.

Utah Admin.R. 475–5b1–3 (1987–88).

■ Under the Board's interpretive rules and Utah case law, a successful showing of just cause requires an employer to establish the employee's conduct warranting dismissal involved three factors: 1) culpability, 2) knowledge of expected conduct, and 3) the offending conduct was within the employee's control. *See, e.g.,* Utah Admin.R. 475–5b1–2 (1987–88); *Grinnell v. Board of Review*, 732 P.2d 113, 114 (Utah 1987) (per curiam); *Stegen*, 751 P.2d at 1163. The failure to establish even one of

---

**2.** This intermediate standard of review also governed our review of "the [Board's] interpretation of the operative provisions of the statutory law it is empowered to administer, especially those generalized terms that bespeak a legislative intent to delegate their interpretation to the responsible agency." *Admin.Servs.*, 658 P.2d at 610.

**3.** *See* MSAPA, *supra*, note 1, at 152.

**4.** *Id.* at 153 (emphasis in original).

**5.** We are mindful that some jurisdictions with administrative procedure acts similar to the MSAPA hold that mixed questions are questions of law and therefore, freely reviewable. *See, e.g., Miller v. Hirschbach Motor Lines, Inc.*, 714 S.W.2d 652, 654–55 (Mo.Ct.App.1986); *Korte v. Employment Sec. Dep't*, 47 Wash.App. 296, 734 P.2d 939, 942–43 (1987).

the three factors is fatal to Pro–Benefit's claim that Mr. Riddle was terminated for "just cause" and therefore not entitled to unemployment compensation benefits.

As we noted earlier, Pro–Benefit does not challenge the Board's findings of operative facts, but rather it challenges the inferences drawn therefrom. Pro–Benefit's principle challenge is that the Board erred in concluding the facts do not demonstrate that Mr. Riddle's conduct was "culpable." [6]

### Culpable Conduct under the Utah Employment Security Act

■ In *Lane v. Board of Review*, 727 P.2d 206, 208 n. 3 (Utah 1986), the Utah Supreme Court held that the administrative rules interpreting the statutory standard of "just cause" are reasonable and rational and may properly serve as the basis of an agency decision. *See* Utah Admin.R. 475–5b1–2 (1987–88). As a result of these interpretive rules and case law, "culpable conduct," often considered a factual determination in other circumstances, has become a part of the legal definition of "just cause" in unemployment compensation cases. Accordingly, we review the Board's determination that an employee's conduct was or was not culpable, under the intermediate standard of review to determine if it is reasonable and rational in light of the evidence in the record. *See, e.g., City of Orem v. Christensen*, 682 P.2d 292, 294 (Utah 1984) (court reviewed the Board's decision that employee's conduct was culpable under the reasonableness and rationality standard). *Accord Clearfield City v. Department of Employment Sec.*, 663 P.2d 440, 443 (Utah 1983).

■ Utah Admin.R. 475–5b1–2(a) (1987–88) provides guidance to the Board in determining whether an employee's conduct was sufficiently culpable, and provides in relevant part, with our emphasis:

This is the seriousness of the conduct or the severity of the offense as it affects continuance of the employment relationship. The discharge must have been necessary to avoid actual or potential harm to the employer's rightful interests.... The wrongness of the conduct must be considered in the context of the particular employment and how it affects the employer's rights. *If the conduct was an isolated incident of poor judgment and there is no expectation that the conduct will be continued or repeated, potential harm may not be shown and therefore it is not necessary to discharge the employee.*

(1) Longevity and *prior work record* are important in determining if the act or omission is an isolated incident or a good faith error in judgment.

Our courts have often declared that not every legitimate basis for discharge necessarily and automatically deprives an employee of his or her eligibility for unemployment benefits.

Although an employer may be justified in discharging an employee who does not perform satisfactory work, the rule is that mere inefficiency or failure of good performance as the result of inability or incapacity, inadvertences, isolated instances of ordinary negligence, or good-faith errors in judgment or decisions do not constitute culpable conduct which precludes a discharged employee from receiving unemployment compensation benefits.

*Logan Regional Hosp. v. Board of Review*, 723 P.2d 427, 429 (Utah 1986) (per curiam).

In its effort to satisfy the culpability prong, Pro–Benefit claims the evidence demonstrates Mr. Riddle acted deliberately and intended to misapply the funds from the Chief Fire Protection check. Pro–Benefit asserts this position summarily, and cites no findings of fact in support of its allegations but rather, merely repeats the sequence of events.[7] The Board concluded

---

**6.** Since we can affirm the Board's order if it properly concluded Mr. Riddle's conduct was not culpable, we need not address whether Mr. Riddle's conduct met the remaining factors of

knowledge and control as the absence of one is fatal to Pro–Benefit's claim.

**7.** In the "Facts" portion of its brief, Pro–Benefit claims in support of its allegation that Mr. Rid-

**444**

on the basis of the same sequence of events, that Mr. Riddle's conduct was not culpable because Mr. Riddle had no motive to purposely alter the books and misapply funds, and derived no benefit from such conduct. The Board, contrary to Pro-Benefit's assertion, did not *require* Pro-Benefit to establish motive or benefit before it would deny compensation benefits, but merely found these facts relevant to the issue of culpability as they negated deliberate wrongdoing.

Thus, the Board found that the whole incident was an "isolated instance[ ] of ordinary negligence, or good-faith error[ ] in judgment." The Board's determination is further supported by the fact that there is no evidence of prior incidents and an audit of the records revealed no further discrepancies in Mr. Riddle's accounting.

In sum, the Board's conclusion that Mr. Riddle's conduct was an isolated incident of mistake or poor judgment and did not therefore, evidence a sufficient degree of culpability, is reasonable and rational and supports its ultimate determination that Mr. Riddle was not terminated for "just cause."

## HEARSAY EVIDENCE

We next address Pro-Benefit's claim the appeal referee erred in *excluding* hearsay testimony. Pro-Benefit argues the appeal referee heard the hearsay testimony of Stan Ashby concerning a conversation he had with Bill Butler, the president of Master Services, but refused to consider this evidence in its determination.

The appeal referee did not *exclude* Stan Ashby's testimony, but instead chose to afford it little weight in resolving the case because it raised significant questions of trustworthiness. Accordingly, we find Pro-Benefit's argument without merit.

---

dle intentionally misapplied funds entrusted to him, that in posting $6,793.70 to Master Services's account, Mr. Riddle was required to make two entries into the computer: (1) for the sum of $6,635.63 as a check to Invoice 4477, and (2) for the sum of $158 as an adjusting credit toward

## REFUSAL TO REMAND

Pro-Benefit's final claim of error is the Board abused its discretion in refusing to remand the case to take the additional testimony of Bill Butler who was unavailable at the time of the original proceedings. *Compare* Utah Code Ann. § 63-46b-16(4)(h)(i) (1988) *with* Utah Admin.R. 475-10d-3(2) (1987-88).

In its determination denying Pro-Benefit's request to remand the case, the Board concluded there was no indication in the record or post-hearing proffer submitted by Pro-Benefit as to what Mr. Butler would testify to. Moreover, Pro-Benefit has failed to provide this court with compelling reasons to find that the Board abused its discretion in denying Pro-Benefit's request. Pro-Benefit had ample opportunity to obtain Mr. Butler's testimony, or the equivalent thereof, and failed to do so. Accordingly, we find no abuse of discretion.

By way of summary, we conclude the UAPA does not affect the intermediate standard for reviewing the Board's application of law to its findings of fact previously used by our courts. We further hold the Board's conclusion that Pro-Benefit did not discharge Mr. Riddle for "just cause" within the meaning of the Employment Security Act is reasonable and rational. The Board's order is affirmed.

GARFF and JACKSON, JJ., concur.

---

an outstanding invoice 975. However, the Board's *uncontested* findings contradict Pro-Benefit's allegations and since Pro-Benefit does not challenge the findings, we treat them as conclusive.