.Joel A. CROSS, Petitioner,

v.

**BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, Workers Compensation Fund, and J.D. McNeil Construction, Respondents.**

**No. 910294–CA.**

Court of Appeals of Utah.

Jan. 29, 1992.

---

Debra J. Moore and Mary J. Woodhead, Salt Lake City, for petitioner.

Benjamin Sims, Salt Lake City, for Utah Indus. Com'n.

Suzan Pixton, Salt Lake City, for Workers Compensation Fund and J.D. McNeil Const.

Before BILLINGS, ORME and RUSSON, JJ.

RUSSON, Judge:

Petitioner, Joel A. Cross, appeals from a final agency order of the Industrial Commission of Utah denying his claim for workers' compensation benefits pursuant to Utah Code Ann. § 35–1–45 (1988). We affirm.

## I. FACTS

The facts in this case were stipulated to by the parties. On June 4, 1988, at approximately 2:00 p.m., Joel Cross was driving home from work in his 1973 Ford Econoline van on I–80 near the Salt Lake/Tooele County border when the van exploded into flames. As a result of the fire, Cross sustained severe burns over a considerable portion of his body and consequently incurred substantial medical expenses. Cross claimed that he was in the course of his employment at the time of the incident and filed a claim for workers' compensation benefits. The Industrial Commission denied Cross's claim.

At the time of the incident, and since February 1988, J.D. McNeil Construction (McNeil) employed Cross as a laborer. Ap-proximately one month prior to the incident, McNeil assigned Cross to a job site in Coalville, Summit County, Utah. On the day of the fire, Cross drove from his home in Tooele to his foreman's home in Salt Lake City. He left his van there and traveled to the Coalville work site in another vehicle. Later that day, when work had ceased, Cross returned to Salt Lake City, where he picked up his van and proceeded toward his home in Tooele. The fire occurred en route from Salt Lake City to Tooele.

Prior to Cross's transfer to the Coalville site, Cross had been assigned to a job in Delle, Tooele County, Utah. Because the Delle site was illuminated at night, Cross had been requested on certain occasions to check the lights at the site and replace the batteries as required. To this end, Cross had carried batteries for the lights in his vehicle. Cross was never called to check the lights after he was transferred to the Coalville project; in fact, Cross's supervisor recalls directing Cross that he would be relieved of that duty because a new foreman was assuming responsibility for the Delle project. Cross did not return the batteries prior to the incident and continued to transport them in his van. However, the batteries were not the cause of the fire.

Seeking compensation for his sustained injuries, Cross filed an application for a hearing with the Industrial Commission of Utah on June 2, 1989. The claim was heard by an administrative law judge and denied. Cross thereafter filed a request for review by the Industrial Commission, which request was also denied.

The sole issue presented for review is whether the Industrial Commission properly denied Cross workers' compensation benefits pursuant to Utah Code Ann. § 35–1–45 (1988).

## II. STANDARD OF REVIEW

Utah Code Ann. § 63–46b–16(4) (1988) of the Utah Administrative Procedures Act (UAPA) provides:

The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

. . . . .

(d) the agency has erroneously interpreted or applied the law.

■ With the adoption of UAPA, deference to an agency's statutory construction should be given only "when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." *Morton Int'l v. Auditing Div. of the Utah State Tax Comm'n,* 814 P.2d 581, 589 (Utah 1991). Where there exists a grant of discretion, "we will not disturb the Board's application of its factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality." *Pro–Benefit Staffing v. Board of Review,* 775 P.2d 439, 442 (Utah App.1989). "[A]bsent a grant of discretion, a correction-of-error standard is used in reviewing an agency's interpretation or application of a statutory term." *Morton,* 814 P.2d at 588; *see also Mor–Flo Indus. v. Board of Review,* 817 P.2d 328, 330 (Utah App.1991).

The relevant portion of the statute at issue here, Utah Code Ann. § 35–1–45 (1988), reads:

Each employee ... who is injured ... by accident arising out of and in the course of his employment, wherever such injury occurred, ... shall be paid compensation for loss sustained on account of the injury ... and such amount for medical, nurse, and hospital services and medicines....

Since § 35–1–45 does not expressly or impliedly grant discretion to the Industrial Commission in construing the specific language of the statute, we review the commission's interpretation of § 35–1–45 for correctness.

## III. ANALYSIS

Cross argues that the injuries he sustained while traveling home from the Coal-

ville project site arose out of and in the course of his employment for McNeil, and are therefore compensable under § 35–1–45. We disagree.

■ The well established rule is that "an employee is not deemed to be within the course of his employment for [workers'] compensation purposes when he furnishes his own transportation and is injured while going to or coming from his place of employment." *Higgins v. Industrial Comm'n,* 700 P.2d 704, 707 (Utah 1985); *see also Cherne Constr. v. Posso,* 735 P.2d 384, 385 (Utah 1987); *State Tax Comm'n v. Industrial Comm'n,* 685 P.2d 1051, 1053 (Utah 1984); *Barney v. Industrial Comm'n,* 29 Utah 2d 179, 506 P.2d 1271, 1272 (1973); and *Bailey v. Utah State Indus. Comm'n,* 16 Utah 2d 208, 398 P.2d 545, 546 (1965). In support of the "going and coming" rule, the Utah Supreme Court has reasoned that:

The major premise of the "going and coming" rule is that it is unfair to impose unlimited liability on an employer for conduct of its employees over which it has no control and from which it derives no benefit. Therefore, the major focus in determining whether or not the general rule should apply in a given case is on the benefit the employer receives and his control over the conduct.

*Whitehead v. Variable Annuity Life Ins. Co.,* 801 P.2d 934, 937 (Utah 1989).

■ Cross argues that he is excepted from the "going and coming" rule because he conferred a substantial benefit on his employer by traveling long distances to and from temporary construction sites. According to Cross, McNeil received a benefit because it was relieved of the necessity of hiring local crews for each new construction job.

In support of the proposition that considerable travel to temporary work sites is relevant in determining whether an accident arises out of and in the course of one's employment, Cross cites a line of "oil drilling" cases, namely, *Loffland Bros. v. Baca,* 651 P.2d 431 (Colo.App.1982); *Messenger v. Sage Drilling Co.,* 9 Kan.App.2d 435, 680 P.2d 556 (1984); *Lassabe v. Sim-*

mons *Drilling, Inc.,* 228 Mont. 94, 743 P.2d 568 (1987); *Christian v. Nicor Drilling Co.,* 653 P.2d 185 (Okla.1982); and *Austin Drilling Co. v. Rice,* 616 P.2d 446 (Okla. App.1980). These cases, however, are not dispositive of the case at bar. In each of the cases cited, the employer provided transportation to the remote job site, or alternatively paid the travel expenses to and from the work site. The courts ruled in those cases that transportation for crew members to drilling sites was an integral and necessary part of employment in the oil drilling industry and, therefore, the commute and resulting disability were within the course of the employee's employment. *See Messenger,* 680 P.2d at 560.

In the present case, McNeil did not undertake the responsibility of providing transportation for Cross. Nor did McNeil commit to paying Cross's transportation expenses to and from the Coalville project. The ride-sharing arrangement between Cross and his foreman was arranged out of mutual convenience, rather than at the direction of McNeil. The only understanding between Cross and McNeil was that Cross would be able to provide his own transportation to the job sites, which understanding is implied between almost any employer and employee. The nature of the construction business is not atypical and thus deserving of special treatment like the oil drilling industry. Transportation to a job site is not integral and necessary to employment as a construction worker, and the only benefit conferred upon the employer by such travel is the employee's arrival at the work site. *See Loffland Bros.,* 651 P.2d at 432–33. Accordingly, we find these cases inapplicable to the case at bar.

Cross also cites dicta from several other cases in an attempt to fit within other exceptions to the "going and coming" rule; however, all are distinguishable. In *State Tax Comm'n v. Industrial Comm'n of Utah,* 685 P.2d 1051 (Utah 1984), the Utah Supreme Court affirmed an order of the Industrial Commission, ruling that a person injured en route to a training program at the direction of her employer fit within the "special errand" exception to the "going and coming rule." Nothing in the language of *State Tax Comm'n* advances Cross's position. At the time of Cross's accident, he was not on an errand for his employer, or even traveling at his employer's direction. Cross was merely traveling home from work. Accordingly, Cross's reliance on *State Tax Comm'n* is misguided.

In another case cited by Cross, *Hinojosa v. Workmen's Compensation Appeals Bd.,* 8 Cal.3d 150, 104 Cal.Rptr. 456, 501 P.2d 1176 (1972), the California Supreme Court recognized an exception to the "going and coming" rule for an employee who was required to provide his own transportation between his employer's noncontiguous ranches during the day. The court reasoned:

> [W]hen a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business during the day, accidents on the way to or from the office are statistically certain to occur eventually, and the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise.

*Id.* 104 Cal.Rptr. at 462, 501 P.2d at 1182 (quoting *Huntsinger v. Fell,* 22 Cal.App.3d 803, 810, 99 Cal.Rptr. 666, 670 (1972)).

Likewise, Cross does not fit within this rationale. Cross has never alleged that his employment required travel between job sites during the work day; rather he acknowledges that his employer required only that he provide his own transportation to and from work. For that reason, *Hinojosa* provides no direction in this case.

Additionally, Cross argues that the Commission erred in failing to find that he was an "on call" employee and therefore subject to the exception found in *Bailey v. Utah State Indus. Comm'n,* 16 Utah 2d 208, 398 P.2d 545 (1965). In *Bailey,* the court held that the death of a service station owner en route to work was in the course of employment. In reaching its conclusion, the court determined that the service station owner's station wagon was necessary to his business. *Id.* 398 P.2d at 546. Specifically, the court found that the owner

used the vehicle for emergency calls at all hours, carried necessary tools in the vehicle to service his customers' automobiles, and allowed customers to use the vehicle while their automobiles were being serviced. *Id.* Further, the court found that the service station owner owned another automobile that was used as the "family car," and that he listed the station wagon on his books as a business asset. *Id.*

Cross claims that he fits within this exception because at the time of his accident, he was carrying batteries in his vehicle to service the lights at McNeil's site in Delle, Utah. However, the fact that Cross had the batteries in his vehicle is not sufficient to demonstrate that Cross's automobile was necessary to his employment. Cross had not checked the lights at the Delle project since he had been transferred to the Coalville site. Moreover, Cross's supervisor at the Delle site had advised Cross that he would no longer be required to check the lights because a new foreman had been assigned to the project. Thus, the mere fact that Cross was carrying work implements in his van, which implements were leftover from his previous job assignment, is insufficient to qualify him for the *Bailey* exception.

Lastly, since travel distance is not the focus of, or even a factor in, the "going and coming" rule, Cross's argument that considerable travel to temporary work sites is relevant in determining whether an acci-dent arises out of and in the course of one's employment is not persuasive. To hold that employees who travel long distances to work are outside the purview of the rule would essentially allow the exception to swallow the rule. It would also tend to discourage employers from hiring outside a local area, and in cases like the instant one, to jettison long-term employees when a work site is relocated. It is the employee's individual choice to secure remote employment, and it does not follow that such a decision inherently confers a benefit on one's employer. Accordingly, we reject Cross's argument that he is not subject to the "going and coming" rule and hold that Cross's accident did not arise out of and in the course of his employment.

## IV. CONCLUSION

Cross's claims on appeal are without merit. We, therefore, affirm the Industrial Commission's final agency order denying Cross workers' compensation benefits.

BILLINGS and ORME, JJ., concur.