**Lavell HELF, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF UTAH, and Yellow Freight System, Inc., Respondents.**

No. 940433–CA.

Court of Appeals of Utah.

Aug. 17, 1995.

Hans M. Scheffler, Salt Lake City, for petitioner.

David M. McConkie, Stuart F. Weed, Kirton & McConkie, Salt Lake City, for respondents.

Before ORME, BENCH and BILLINGS, JJ.

1. Syncope is defined as a "partial or complete temporary suspension of respiration and circulation due to cerebral ischemia and characterized by sudden pallor, coldness of the skin, and partial or complete unconsciousness. *Webster's Third New Int'l Dictionary* 2319 (1986).

2. Section 35–1–45 states, in pertinent part:

BENCH, Judge:

Petitioner Helf asks this court to reverse the Industrial Commission's order denying him compensation for a fall sustained when Helf experienced a syncopal episode. We affirm.

## FACTS

Helf has a heart condition and a history of syncope.[1] On September 9, 1992, Helf was at the Gates Rubber Company picking up a shipment of freight for his employer, Yellow Freight System, Inc. (Yellow Freight). To connect the loading dock with his truck trailer, Helf pulled a ring to release a spring-activated dock plate. Helf then stood on the dock plate which was moved into position by Helf's body weight. The height of the trailer was two to four inches higher than the loading dock. While Helf was still standing on the plate, he experienced a syncopal episode. Unconscious, Helf fell backwards onto the flat concrete loading dock, and sustained serious head injuries.

Helf petitioned for workers' compensation. After an administrative law judge denied Helf's application for benefits, Helf asked the Industrial Commission to review his application and the administrative law judge's order. The Industrial Commission upheld the denial of benefits, and Helf filed with this court his petition for writ of review.

## ANALYSIS

Helf contends that the Industrial Commission erred in holding that his injury did not arise out of and in the course of his employment. *See* Utah Code Ann. § 35–1–45 (1994).[2] "[D]eference to an agency's statutory construction should be given only 'when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or im-

Each employee ... who is injured ... by accident arising out of *and* in the course of his employment, wherever such injury occurred, if the injury accident was not purposely self-inflicted, shall be paid compensation for loss sustained on account of the injury....

Utah Code Ann. § 35–1–45 (1995) (emphasized "and" was changed from "or" by legislative amendment in 1988.)

plied from the statutory language.'" *Cross v. Board of Review of Indus. Comm'n,* 824 P.2d 1202, 1204 (Utah App.1992) (quoting *Morton Int'l, Inc. v. Auditing Div. of Utah State Tax Comm'n,* 814 P.2d 581, 589 (Utah 1991)). Section 35–1–45 "does not expressly or impliedly grant discretion to the Industrial Commission in construing the specific language of the statute." *Cross,* 824 P.2d at 1204. Therefore, we review the Commission's interpretation of section 35–1–45 for correctness. *Id.*

■■■ In *Allen v. Industrial Commission,* 729 P.2d 15 (Utah 1986), the supreme court enunciated the test for claims involving preexisting conditions. The supreme court declared:

> [t]he language "arising out of or in the course of his employment" found in U.C.A., 1953, § 35–1–45 (Supp.1986), was apparently intended to ensure that compensation is only awarded where there is a sufficient causal connection between the disability and the working conditions. The causation requirement makes it necessary to distinguish those injuries which (a) coincidentally occur at work because a preexisting condition results in symptoms which appear during work hours without any enhancement from the workplace, and (b) those injuries which occur because some condition or exertion required by the employment increases the risk of injury which the worker normally faces in his everyday life. (Citation omitted.) Only the latter type of injury is compensable under ... [section] 35–1–45.

*Allen,* 729 P.2d at 24–25. The supreme court then adopted a two-part causation test that requires both medical and legal causation before compensation can be awarded. *Id.* at 25; *see also Workers' Compensation Fund v. Industrial Comm'n,* 761 P.2d 572, 574 (Utah App.1988) (requiring that "claimant establish both legal and medical causation" to show that injury arose from employment). To meet the medical causation requirement, Helf "must show by evidence, opinion, or otherwise that the stress, strain, or exertion required by his ... occupation led to the resulting injury or disability." *Allen,* 729 P.2d at 27. "To meet the legal causation

requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition." *Id.* at 25. In other words, Helf must show both legal and medical causation; otherwise, his claim that his injury arose from his employment will fail.

### Medical Causation

■■■ We first analyze Helf's claim under the medical causation prong of the *Allen* test. Helf contends that the Industrial Commission erred in not finding that his employment activities medically caused his injury. "The purpose of the medical cause test is to ensure that there is a medically demonstrable causal link between the work-related exertions and the unexpected injuries that resulted from those strains." *Allen,* 729 P.2d at 27. Helf is responsible for showing by a preponderance of the evidence that his injury was related to his employment activities. *Zupon v. Industrial Comm'n,* 860 P.2d 960, 963 (Utah App.1993). Medical causation is an issue of fact for which "we review the Commission's findings under the substantial evidence standard." *Chase v. Industrial Comm'n,* 872 P.2d 475, 479 (Utah App.1994). We will uphold the Commission's findings when they are supported by "substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chase,* 872 P.2d at 479 (citation omitted). When applying the legal framework that the legislature and courts have provided the Commission, "'we will not disturb the Board's application of its factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality.'" *Cross,* 824 P.2d at 1204 (quoting *Pro–Benefit Staffing, Inc. v. Board of Review,* 775 P.2d 439, 442 (Utah App.1989)).

■■■ Helf presented the opinions of several medical care professionals, including physicians, to support his claim. The record shows some inconsistent medical opinions by

these same experts. Several doctors opined in letters that the electrophysiological stress tests performed on Helf following the accident did not cause any syncopal episodes or heart problems. Dr. Null and Dr. Speed did not find any heart-related causes based on Dr. Freedman's electrophysiological stress tests. Dr. Sochanski determined that Helf's syncope was a natural incident of his heart problem and confirmed that it was not related to exertion at his employment.

After Helf's claim was rejected at the initial hearing before the administrative law judge, Dr. Null and Dr. Freedman then wrote letters that expressed opinions inconsistent with their pronouncements before the initial hearing and contrary to their conclusions from the electrophysiological stress tests. In addition, Dr. Heilbrun concluded that "[i]t is my opinion that this patient sustained a head injury while performing his duties at work. On this basis alone the injury must be considered work related."[3]

Based on the evidence, the Industrial Commission found that Helf's injury resulted from a fall caused by a syncopal episode of "unknown origin." In support of its finding, the Industrial Commission relied on the fact that Helf had a history of spontaneous syncopal episodes and the results of the electrophysiological stress tests. The Industrial Commission determined that no external factor caused Helf's fall. Eyewitness testimony supports the fact that Helf did not trip, slip, or get pushed. Further medical opinion supported the Industrial Commission's conclusion. Dr. Barbuto declared that "when a person falls in the manner described by the witness to Mr. Helf's fall, the implication is that the fall was due to a medical condition personal to Mr. Helf. The incline of the plate would not have contributed to a fall in this manner."

We hold that the Industrial Commission did not err in its determination that Helf failed to establish, by a preponderance of the evidence, the medical causation portion of the *Allen* test.[4] The Industrial Commission could have reasonably come to the conclusion it did, based on the evidence before it. *Cross*, 824 P.2d at 1204.

### Unexplained Fall Doctrine

Helf argues that even if his fall was not caused by work-related aggravation of his heart condition, he is nonetheless entitled to compensation under the "unexplained fall doctrine." Although never adopted in Utah, the unexplained fall doctrine has been defined in other jurisdictions as a fall that "would not have happened if the employee had not been engaged upon an employment errand at the time." 1 Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 10.31(a) at 3–94 (1995).

Helf claims that because he was at work when the fall occurred, this should be considered a compensable injury due to unexplained causes. However, the Industrial Commission determined, based on the evidence presented, that Helf's fall was not unexplained. The explanation for Helf's fall was a syncopal episode caused by factors personal to Helf.

### CONCLUSION

The Industrial Commission reasonably determined that Helf's injury was caused by a syncopal episode personal to Helf, which did not arise out of his employment activities. We therefore affirm the Industrial Commission's order.

ORME, P.J., and BILLINGS, J., concur.

---

3. There is some question as to Dr. Heilbrun's conclusion because there is no support to show that Helf's injury arose from his employment activities, only that it occurred during the course of Helf's work. That fact is undisputed. Thus, Dr. Heilbrun's legal opinion is not particularly helpful to determine medical causation.

4. Because a claimant must show *both* medical and legal causation, if one prong is not proven, then the claim fails. We, therefore, do not reach the question of whether Helf proved the legal causation prong of the *Allen* test.