2019 UT App 62

## THE UTAH COURT OF APPEALS

A-1 SEPTIC TANK SERVICES LLC AND AUTO OWNERS
INSURANCE COMPANY,
Petitioners,
*v.*
KRIS MESSERSMITH,
Respondent.

Opinion
No. 20170690-CA
Filed April 25, 2019

Original Proceeding in this Court

Mark R. Sumsion and Cody G. Kesler, Attorneys
for Petitioners

Austin B. Egan, Attorney for Respondent

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     An administrative law judge (ALJ) dismissed with prejudice a request for a hearing on Kris Messersmith's claim for work-related injury and disability benefits following a work accident. Messersmith appealed to the Utah Labor Commission (Commission), and the Commission modified part of the ALJ's decision: the Commission changed the dismissal to one without prejudice, thereby permitting Messersmith to refile his claim. A-1 Septic Tank Services LLC and Auto Owners Insurance Company (collectively, A-1) seek judicial review. Because the Commission effectively eliminated the ALJ's decision on the merits, we set aside the Commission's decision and reinstate the ALJ's disposition of the matter.

BACKGROUND

¶2    A-1 hired Messersmith in 2014 to work as a truck driver, requiring that he clean septic tanks and storm drains as part of his position. In a non-work-related accident sustained on December 25, 2015, Messersmith slipped and landed on his buttocks and was diagnosed as suffering from an "acute right buttock contusion." He obtained a magnetic resonance imaging (MRI) scan that showed he suffered from "early degeneration" and a disc protrusion in the lower back between the last lumbar vertebra and the first sacral segment of the vertebral column (L5-S1).

¶3    Shortly thereafter, Messersmith was diagnosed with a "subacute lumbar contusion," and a physician assistant noted that two of Messersmith's lower vertebrae needed fusion. During a different exam, Messersmith reported to a family nurse practitioner (FNP) that he was in "the worst pain he has ever experienced." Despite the pain, Messersmith took no time off work and continued performing his normal work duties.

¶4    On May 25, 2016, while working and cleaning storm drains, Messersmith pulled on a metal grate weighing "a few hundred pounds," and he felt a "pop" in his low back. He obtained a second MRI on May 31, 2016, which showed a "relatively large" central disc herniation at L5-S1. During an exam, the physician (Doctor 1) noted that Messersmith "was getting by with the pain until [May 25, 2016,] when he reinjured it pulling a storm drain." Doctor 1 performed surgery on August 5, 2016, including discectomy, posterior lumbar fusion, and transforaminal lumbar interbody fusion. Following surgery, Messersmith had several post-operative outpatient medical visits.

¶5    In 2016, Messersmith submitted an application for hearing with the Commission and requested medical benefits, temporary total disability benefits, travel reimbursement, and unpaid interest for the May 25 work-related injury. The Commission

processed his application and ordered A-1 to respond to the application for hearing and request for benefits. In its answer to the application, A-1 denied liability for Messersmith's claim and asserted that there was no medical causation between Messersmith's workplace accident and his claimed injuries.[1]

¶6      At A-1's request, Messersmith underwent a separate medical exam (A-1 Exam) in which another physician (Doctor 2) concluded that Messersmith's injuries and his need for surgery were "causally related to the December 25, 2015 injury and not affected" by the May 25 work-related accident. Doctor 2 further concluded that the May 25 accident likely did not cause a permanent or temporary aggravation of Messersmith's preexisting back condition. Relying on the A-1 Exam report, A-1 continued to deny liability.

¶7      The ALJ held a hearing and thereafter determined that there was no "specific record in which a provider opined that [Messersmith's] back issue was medically causally related to the May 25, 2016 industrial accident." Because no medical opinion was admitted that conflicted with Doctor 2's assessment, the ALJ concluded that there was no reason to refer the matter to an impartial medical panel and dismissed Messersmith's claim with prejudice.

---

1. The parties do not dispute legal causation, that is, that Messersmith's May 25 accident was the legal cause of his injuries. *See Allen v. Industrial Comm'n*, 729 P.2d 15, 25 ("To meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition."). But they vigorously dispute whether that accident medically caused his injuries and disability due to the presence of a preexisting condition. *See id.* at 27 (observing that to meet the medical causation standard, a claimant must "prove the disability is medically the result of an exertion or injury that occurred during a work-related activity").

¶8 Messersmith petitioned the Commission to review the ALJ's decision, asserting that he had provided sufficient evidence of medical causation and that the Commission should remand the matter to the ALJ with instructions to appoint a medical panel. The Commission agreed with the ALJ that Messersmith had failed to provide evidence of medical causation linking the May 25 accident to his injuries that required surgery. The Commission observed that the medical reports submitted by Messersmith, including those from Doctor 1, "stopped short of opining that Mr. Messersmith's low-back condition was medically causally connected to the [May 25] accident."

¶9 Due to an alleged lack of supporting medical documentation, the Commission determined that Messersmith had failed to meet his initial burden of presenting sufficient supporting documentation of a claim. The Commission observed that "[g]enerally, an application for hearing that is not sufficiently supported by accompanying medical documentation is dismissed prior to an evidentiary hearing." The Commission modified the ALJ's decision; it altered the disposition from a dismissal with prejudice, to a dismissal without prejudice because, in the Commission's view, the ALJ's evidentiary hearing did not "truly [adjudicate] the merits of the claim as there was no medical opinion that actually supported Mr. Messersmith's position."

ISSUE AND STANDARD OF REVIEW

¶10 A-1 seeks judicial review of the Commission's decision. A-1 asks us to set aside the disposition of Messersmith's claim without prejudice and requests that we reinstate the ALJ's decision to dismiss with prejudice. "Whether the Commission applied the correct legal standard in making its determination is . . . a question of law, which we review for correctness." *A & B Mech. Contractors v. Labor Comm'n*, 2013 UT App 230, ¶ 15, 311 P.3d 528.

ANALYSIS

¶11    In Utah, employees who sustain injuries in the course of their employment may be entitled to workers' compensation benefits. Utah Code Ann. § 34A-2-401(1) (LexisNexis 2015). For an employee to receive compensation for an industrial accident, the employee must demonstrate that the injury (1) occurred by accident, and (2) arose "out of and in the course of the employee's employment." *Id.*; *see also Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 16, 378 P.3d 1273. The parties here only dispute whether Messersmith's injury arose out of his employment. To show that an injury arose out of his employment, "[t]he claimant must show that the work exertion was both the legal cause and the medical cause of the injury or disability." *Hutchings*, 2016 UT App 160, ¶ 16. Because the parties do not dispute legal causation, we focus our analysis on medical causation.

¶12    "The purpose of the medical causation requirement is to ensure that there is a medically demonstrable causal link between the legally sufficient work-related exertions and the unexpected injuries that resulted from those strains." *Id.* ¶ 18 (quotation simplified). "A claimant attempting to show that the work-related exertion aggravated a preexisting condition must prove the subsequent disability is medically the result of an exertion or injury that occurred during a work-related activity, and not solely the result of a pre-existing condition." *Id.* (quotation simplified).

¶13    Here, the ALJ determined that Doctor 2 offered the only medical causation assessment of Messersmith's work-related exertion and injury. Doctor 2 opined that Messersmith's injury, which required back surgery, was medically causally related to Messersmith's December 25 fall and not affected by his May 25 work-related accident. Without an assessment contradicting Doctor 2, the ALJ concluded that Messersmith had not established medical causation and dismissed Messersmith's claim with prejudice. On review, the Commission affirmed the

ALJ's findings and conclusions. But it dismissed Messersmith's claim without prejudice to allow him to refile.

¶14 A-1 challenges the Commission's decision to dismiss Messersmith's claims without prejudice as "endeavoring to give Messersmith a 'do-over' at [A-1]'s expense and to its substantial prejudice." A-1 specifically argues that Messersmith's claim for benefits was adjudicated on the merits at the evidentiary hearing held by the ALJ and that the procedural rule employed by the Commission to allow Messersmith to refile his claim does not excuse him from meeting his burden of proof.

¶15 In response, Messersmith contends that the ALJ and the Commission lacked jurisdiction to hear and decide his claims because each determined that his application did not include "supporting medical documentation." While Messersmith "firmly believes the medical documentation he submitted establishes that his claimed injury (herniation at L5-S1) was caused by (or at least aggravated by) the [May 25 accident]," he agrees with the Commission's assessment that it should have rejected Messersmith's application in its initial review.

¶16 We first address whether Messersmith's claim was adjudicated on the merits by the ALJ. Then we consider the Commission's application of a procedural rule to dismiss Messersmith's claim without prejudice to his refiling of that claim.

## I. The ALJ's Decision

¶17 Messersmith requested a hearing before the Commission to consider his claim for work-related injury and disability compensation approximately two months after his May 25 work-related accident. He asserted that the May 25 accident caused his back injuries and necessitated surgery. He attached medical records to his application in support of his claim, including reports from FNP and Doctor 1. Following its initial review of Messersmith's application, the Commission ordered

A-1 to answer. A-1 did so, and it denied liability for the alleged work-related injury.

¶18   Messersmith's claim proceeded through discovery, and the ALJ set an evidentiary hearing. The parties stipulated to a continuance to allow A-1 to depose Messersmith and to obtain the A-1 Exam, and allow Messersmith to obtain a medical exam to rebut the A-1 Exam report. Although Messersmith asserts that he asked Doctor 1 to read and respond to Doctor 2's report, Doctor 1 never submitted a rebuttal opinion.

¶19   The ALJ held an evidentiary hearing and considered Messersmith's supporting medical documentation, including the reports of Doctor 1 and FNP. The ALJ determined that Messersmith provided no documents in which "a provider opined that [Messersmith]'s back issue was medically causally related to the [May 25 accident]." The ALJ noted Doctor 1's observation that Messersmith "was getting by with the pain until [May 25, 2016,] when he reinjured [his back] pulling a storm drain," but the ALJ determined that this was merely a medical history note and not a causal assessment or diagnosis. Left only with Doctor 2's uncontroverted opinion, the ALJ concluded that Messersmith had failed to carry his burden of proving medical causation.

¶20   The ALJ's decision resolved Messersmith's application on the merits. "'On the merits' is a term of art that means that a judgment is rendered only after a court has evaluated the relevant evidence and the parties' substantive arguments." *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 42 n.6, 44 P.3d 663 (citing Black's Law Dictionary 1117 (7th ed. 1999)). Under the circumstances here, the ALJ considered the evidence submitted by the parties and the arguments offered for and against Messersmith's application and concluded that Messersmith's supporting documentation failed to establish medical causation and, consequently, did not support an award of injury and disability compensation.

## II. The Commission's Decision

¶21 On review, the Commission agreed with the ALJ that Messersmith failed to present evidence of medical causation. The Commission observed that Messersmith provided treatment reports from FNP and Doctor 1, and noted those reports "stopped short" of assessing medical causation. The Commission nevertheless modified the ALJ's decision, ordering that Messersmith's application be dismissed without prejudice to refiling. It did so because, in its view, the hearing before the ALJ did not "truly" adjudicate the merits of Messersmith's claim and "this matter should have been dismissed without prejudice prior to a hearing." This was error. Because we have already concluded that the ALJ's decision resolved Messersmith's claim on its merits, we focus our review on the Commission's procedural basis for modifying the ALJ's decision.

¶22 The Utah Administrative Code requires that hearing applications for a claim for disability compensation "include supporting medical documentation of the claim where there is a dispute over medical issues." Utah Admin. Code R602-2-1(B)(3). "Supporting medical documentation" is defined as "Adjudication Form 113 Summary of Medical Record or other medical report or treatment note completed by a physician that indicates the presence or absence of a medical causal connection between benefits sought and the alleged industrial injury or occupational disease." *Id.* R602-2-1(A)(4).

¶23 Applications submitted without supporting medical documentation "may not be mailed to the employer or insurance carrier for answer." *Id.* R602-2-1(B)(3); *see also id.* R602-2-1(B)(4) ("When an Application for Hearing with appropriate supporting documentation is filed with the [Division of Adjudication within the Labor Commission], the Division shall forthwith mail to the respondents a copy of the Application for Hearing, supporting documents and Notice of Formal Adjudication and Order for Answer."). But, if a respondent is ordered to answer an application, it may also "file a motion to dismiss the Application

for Hearing where there is no supporting medical documentation filed to demonstrate medical causation when such is at issue between the parties." *Id.* R602-2-1(B)(3).

¶24 Messersmith attached medical documentation to his application, believing those documents supported his claim. He provided treatment notes from both FNP and Doctor 1 that he alleged indicated "the presence . . . of a medical causal connection." *Id.* R602-2-1(A)(4). In June 2016, FNP noted Messersmith's lower back issues and then explained that Messersmith "subsequently continued to work and while lifting off a huge grate while working on some storm drains, hurt his back [and] ended up in the emergency room." Doctor 1 also noted Messersmith's December 25 accident and back injury, explaining that Messersmith "was getting by with the pain until [May 25, 2016,] when he reinjured it pulling a storm drain." Thus, each medical record submitted by Messersmith suggested that a medical causal connection existed between Messersmith's work-related injury and claimed disability. The ALJ and the Commission each noted FNP and Doctor 1's treatment notes, but disagreed with Messersmith that these notes were sufficient to prove Messersmith's disability was medically the result of his May 25 work-related accident. In other words, Messersmith attached the supporting medical documents necessary to proceed with his application for hearing, but in the end those documents did not prove medical causation.

¶25 Critically, the Utah Administrative Code does not require an applicant to first prove medical causation in medical documentation submitted with a claim before the request may proceed to an order for the respondents to answer. Rather, it requires that an applicant attach to an application for hearing any medical records, medical reports, or treatment notes, completed by a physician, indicating "the presence or absence of a medical causal connection between benefits sought and the alleged industrial injury or occupational disease." *Id.* In circumstances where the applicant fails to attach supporting medical documentation to the application, the Commission may

not mail that application "to the employer or insurance carrier for answer until the appropriate documents have been provided." *Id.* R602-2-1(B)(3).

¶26 Because Messersmith attached supporting medical documentation to his application for hearing, flawed as it might have been, his claim was sent to A-1 for a response and ultimately adjudicated in an evidentiary hearing.[2] Consequently, the provision of the Utah Administrative Code relied upon by the Commission—authorizing the Commission to prevent further proceedings on an application for hearing "until the appropriate documents have been provided"—simply was not applicable to Messersmith's claim after the evidentiary hearing. *See id.*

¶27 The ALJ carefully considered all of the evidence and found that Messersmith did not carry his burden of proof; Messersmith's supporting medical documentation did not establish medical causation. This determination did not mean that Messersmith's application should have been dismissed before a hearing. Nor did the insufficient evidence somehow render the evidentiary hearing something less than an adjudication of Messersmith's claim.[3] Accordingly, the

---

2. In his briefing before this court, Messersmith emphatically argues that he proffered sufficient supporting medical documentation with his application for hearing. Indeed, he "firmly believes the medical documentation he submitted establishes" medical causation.

3. Messersmith relatedly posits that "if [his] supporting medical documentation *did not establish causation* between the benefits he sought and his industrial injury—as both the ALJ and the Labor Commissioner concluded that it did not—then Messersmith's Application should have been rejected from the outset, and the Labor Commission lacked jurisdiction to adjudicate it." (Emphasis added.) Whether an applicant ultimately proves

(continued…)

Commission erred when, relying on procedural provisions of the Utah Administrative Code, it effectively eliminated the ALJ's decision on the merits by providing an opportunity for Messersmith to refile his work-related injury and disability compensation claim.

CONCLUSION

¶28 After considering all of the evidence and arguments presented by the parties, the ALJ resolved Messersmith's claim for work-related injury and disability benefits on the merits. The Commission erred when, in its review of the ALJ's decision, it modified the disposition to a dismissal without prejudice to Messersmith's refiling of his claim. Accordingly, we set aside the Commission's decision and reinstate the ALJ's disposition of the matter.

_____

(…continued)

causation is a determination made by an administrative law judge following an evidentiary hearing, unless resolved by stipulation of the parties. *See, e.g.*, Utah Admin. Code R602-2-1(E)(1) ("The administrative law judge may use the stipulated facts, medical records and evidence in the record to make a final determination of liability or refer the matter to a Medical Panel for consideration of the medical issues pursuant to R602-2-2."); *see also Help v. Industrial Comm'n*, 901 P.2d 1024, 1027 (Utah Ct. App. 1995) (approving the order of the Industrial Commission where the claimant "failed to establish, by a preponderance of the evidence," medical causation). In other words, this is precisely the determination that the Commission and the ALJ have jurisdiction to make.