KENNECOTT CORPORATION, KENNECOTT MINERALS COMPANY DIVISION, Plaintiff,

v.

The INDUSTRIAL COMMISSION OF UTAH, and Rose K. Georgas, widow of Alex Demetrios Georgas, Defendants.

No. 19036.

Supreme Court of Utah.

Dec. 28, 1983.

James B. Lee, Erie V. Boorman, Salt Lake City, for plaintiff.

Donovan C. Snyder, Salt Lake City, for defendants.

STEWART, Justice:

Rose K. Georgas, the claimant below and a defendant on appeal, brought this workmen's compensation action against the plaintiff on appeal, Kennecott Corporation, to recover benefits for the death of her husband, Alex Georgas. An administrative law judge granted recovery, and the Industrial Commission denied review. The case presents the question of whether U.C.A., 1953, § 35–1–45, covers an employee's "idiopathic fall" on the employer's premises during lunch hour.

The administrative law judge found the following facts. Mr. Georgas worked as a tripper operator at the Kennecott precipitation plant. On November 16, 1981, he reported to work at his usual time of 3:00 p.m., and worked until the lunch break at 6:30 p.m. He then went to the lunchroom located in the precipitation plant office building, which was some distance from the precipitation plant, called his daughter at home, and left the lunchroom without safety glasses or a hard hat.

At 7:00 p.m., when work was to resume, Georgas was not at his work station. Ordinarily he was prompt in reporting to his station and had not been known to vary from his regular work routine. A search was initiated, and at approximately 11:15 p.m. his body was found floating face down in the number 9 copper settling tank, located not far from the precipitation plant.

An autopsy by the state medical examiner's office attributed Georgas' cause of death to having "drowned in a copper precipitation tank." A "contributing factor" to the drowning may have been "coronary insufficiency secondary to arteriosclerotic cardiovascular disease." Also, an exhibit introduced at the hearing showed contusions on Mr. Georgas' left forehead.

At the administrative hearing, Georgas' supervisor testified that on November 16, 1981, no drinking water was available in the employee locker room because the water was bad. The only potable water available was in the basement of the old launder plant, which is located about 200 yards from the settling pond where Georgas was found and some distance from both the precipitation plant and the precipitation plant office building. The supervisor also testified that he saw Georgas at the beginning of the lunch hour and that the deceased seemed all right to him. Georgas' daughter related that her father sounded fine when he telephoned her during his lunch break.

Based on the above facts, the administrative law judge found:

[T]he deceased on November 16, 1981, suffered an idiopathic fall. As a result of that fall, [the deceased] struck his head on the wall of the settling pond and then fell into the pond and met his death by drowning.

The term "idiopathic fall," in the context of the administrative law judge's opinion, means a fall caused by an internal failing (such as epilepsy or fainting)—in this case, the decedent's coronary failure.

In his findings, the judge did not indicate why Georgas had been in the settling pond area at the time of his fall; indeed, there is no evidence at all on the point. The judge did note, however, that "the unavailability of drinking water in [the precipitation plant office building], and the availability of drinking water at the site of the decedent's death, may very well explain why the decedent was in that area." He further noted that there was no indication that employees were forbidden to be in that area. The judge concluded that Georgas died "in the course of his employment," and awarded compensation, citing *Tavey v. Industrial Commission*, 106 Utah 489, 150 P.2d 379 (1944), as authority. The Industrial Commission denied without comment Kennecott's motion for review.

On this appeal Kennecott argues that, as a matter of law, the claimant should be denied recovery because: (1) Georgas' presence at settling tank no. 9 was not required by his employment duties; and (2) Georgas' diseased heart condition was not causally related to his employment duties.

In response, the claimant argues that, even conceding (1) and (2) above, recovery is still allowed by U.C.A., 1953, § 35–1–45. That section provides for compensation to an employee or his dependents if the employee is injured or killed "by accident arising out of *or* in the course of his employment" (emphasis added). This Court has frequently recognized that since this statute is worded in the disjunctive, it is more liberal than similar statutes in other states, and is satisfied by a claimant fulfilling either the "arising out of" or "in the course of" provisions. *E.g., M & K Corp. v. Industrial Commission,* 112 Utah 488, 189 P.2d 132 (1948).

The claimant's response to Kennecott's arguments is (1) that since the death occurred during Georgas' lunch break, while he was on his employer's premises, apparently ministering to his personal comfort, in a place where he was not forbidden, Georgas was in "the course of his employment," and (2) that pursuant to the idiopathic fall doctrine, recognized by this Court in *Tavey v. Industrial Commission, supra,* the idiopathic or internal condition which precipitates a fall need not be work-related.

■ We agree with both of the claimant's arguments. First, the course of an employee's employment is not limited simply to those places where an employee's work requires his presence. In *M & K*

*Corp. v. Industrial Commission,* 112 Utah 488, 189 P.2d 132 (1948), this Court stated:

"[T]he words 'in the course of' ... refer to the time, place, and circumstances under which [an injury] occurred."

....

... [T]he requirement that the accident arise in the course of the employment is satisfied if it occurs while the employee is rendering service to his employer which he was hired to do *or doing something incidental thereto,* at the time when and the place where he was authorized to render such service. [Emphasis added.]

*Id.* at 492–93, 189 P.2d at 134, *quoting* 71 C.J. *Workmen's Compensation Acts* § 396 at 644 (1935). Similarly, in *Hafer's Inc. v. Industrial Commission,* Utah, 526 P.2d 1188, 1189 (1974), we said:

[T]he scope of one's employment includes not only those things which are direct and primary duties of the assigned job; *but also those things which are reasonably necessary and incidental thereto.* [Emphasis added.]

■ A class of activities widely recognized as "incidental" to employment are those acts engaged in by the employee to minister to his personal comfort. Such acts ordinarily include satisfying thirst or hunger, seeking fresh air, using the restroom, making telephone calls, and the like.[1] An employee does not leave the course of employment by engaging in such acts unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless the method chosen is so unusual or unreasonable that the conduct cannot be considered an incident of the employment. 1A A. Larson, *The Law of Workmen's Compensation*

---

1. *E.g., Royall v. Industrial Commission,* 106 Ariz. 346, 476 P.2d 156 (1970) (making telephone call); *Lizama v. Workmen's Compensation Appeals Board,* 40 Cal.App.3d 363, 115 Cal.Rptr. 267 (1974) (constructing bench for personal comfort to be used on premises); *Divelbiss v. Industrial Commission,* 140 Colo. 452, 344 P.2d 1084 (1959) (showering in employer's facilities); *Chicago Extruded Metals v. Industrial Commission,* 77 Ill.2d 81, 32 Ill.Dec. 339, 395 N.E.2d 569 (1979) (showering in employer's facilities); *Hill*

*v. Terrazzo Machine & Supply Co.,* 279 Minn. 428, 157 N.W.2d 374 (1968) (mailing a card on employer's premises); *Crotty v. Driver Harris Co.,* 49 N.J.Super. 60, 139 A.2d 126 (1958) (getting fresh air); *Strohmeyer v. B.S. & W. Builders, Inc.,* 33 A.D.2d 1070, 307 N.Y.S.2d 525 (1970) (making telephone call); *Richey v. Commander Mills, Inc.,* Okl., 521 P.2d 805 (1974) (going to drink dispenser); *Babcock & Wilcox Construction Co., Inc. v. St. John,* 48 Pa.Comm. 1, 408 A.2d 915 (1979) (using the restroom).

§ 21.00 (1982). A number of jurisdictions recognize the "personal comfort" doctrine.[2] With respect to lunch-time activities on an employer's premises, Professor Larson has stated:

> Injuries occurring *on the premises* during a regular lunch hour arise in the course of employment, even though the interval is technically outside the regular hours of employment in the sense that the worker receives no pay for that time and is in no degree under the control of the employer, being free to go where he pleases.

1A A. Larson, *The Law of Workmen's Compensation* § 21.21(a) (1982) (emphasis in original). *Accord* Annot., *Compensation for Injuries During Lunch Hour on Employer's Premises*, 6 A.L.R. 1151 (1920).

■ The personal comfort rule recognizes the realities of the work place and the necessity of workers to exercise personal discretion in caring for their reasonable needs while working.[3] In the present case, the fatal accident occurred on the employer's premises during the decedent's lunch time, while Georgas was free to go where he pleased. Clearly, Georgas was not engaged in horseplay, *see, e.g., J & W Janitorial Co. v. Industrial Commission*, Utah, 661 P.2d 949 (1983), nor do the circumstances indicate that he had abandoned his job.

On the facts of this case, the administrative law judge's inference that Georgas may have gone to get a drink of water was reasonable. The inference is not altogether free of doubt, since Georgas was found some distance from the drinking water. However, a reasonable inference, even though accompanied by some doubt, should be resolved in favor of recovery. *McPhie v. Industrial Commission*, Utah, 567 P.2d

153 (1977); *M & K Corp. v. Industrial Commission*, 112 Utah 488, 189 P.2d 132 (1948). In venturing into the area where settling tank no. 9 was located, Georgas did not engage in conduct that was so unusual or unreasonable that it was outside the personal comfort doctrine and thus could not be considered an incident of employment. *See* 1A A. Larson, *supra*, § 21.80–21.84.

■ The claimant's second argument is that compensation is allowed for the effects of an idiopathic fall even though the internal weakness that precipitates the fall is not caused by an employee's work. The general rule concerning causation is that an employee cannot recover for a physiological malfunction which is not job-induced and which could have happened as easily away from work as at work. Thus, in *Sabo's Electronic Service v. Sabo*, Utah, 642 P.2d 722, 723–24 (1982), we denied recovery for a herniated disc caused by pre-existing back problems from another job, and which manifested itself when the employee engaged in lifting activities which were not strenuous and could have happened anywhere. *Accord Billings Computer Corp. v. Tarango*, Utah, 674 P.2d 104 (1983); *Farmers Grain Co-op. v. Mason*, Utah, 606 P.2d 237 (1980); *Church of Jesus Christ of Latter-day Saints v. Industrial Commission and Thurman*, Utah, 590 P.2d 328 (1979). *See also Nuzum v. Roosendahl Construction and Mining Corp.*, Utah, 565 P.2d 1144 (1977); *Redman Warehousing Corp. v. Industrial Commission*, 22 Utah 2d 398, 454 P.2d 283 (1969).

A different rule applies, however, where because of some non-occupational internal weakness (such as a heart attack, epileptic fit, or fainting spell), an employee falls and

---

**2.** *See* note 1, *supra;* 1A A. Larson, The Law of Workmen's Compensation § 21.00 *et seq.* (1982).

**3.** To the extent that this rule is inconsistent with the following statement in *Askren v. Industrial Commission*, 15 Utah 2d 275, 277, 391 P.2d 302, 303 (1964), we overrule it:

> We are in agreement with the argument advanced that where an employee upon his

own time is engaged in some activity or using some facility made available by the employer gratuitously for the comfort, convenience, or recreation of employees, and which is of no particular advantage or benefit to the employer in carrying on his business, an injury suffered in connection therewith should not be considered as arising out of the employment.

sustains an injury from the fall. Professor Larson states:

> The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle.

1 A. Larson, *The Law of Workmen's Compensation* § 12.11 at 3–254, 3–256 (1982).

This "idiopathic fall" rule was recognized in Utah in *Tavey v. Industrial Commission*, 106 Utah 489, 150 P.2d 379 (1944), in which this Court upheld recovery of a bookstore employee who, while at work, fainted and struck her head on a low bookshelf, causing a concussion and a temporary absence from work. The Court held that to be an "accident" within the definition of the statute, the weakness that precipitated the fall need not be work-related:

> We hold that there was an "injury caused by accident", and that the plaintiff is entitled to compensation, regardless of the fact that the cause of the fall may have been physical weakness or illness unrelated to the duties or conditions of the employment. Compensation in Utah can not be denied merely because the remote cause of the injury was an idiopathic condition not due to the employment.... If the immediate cause of the injury was an accident, as here, it is immaterial under our statute that the cause of the fall was a fainting spell or that the accident would not have happened but for the illness of the claimant. "An accident is not the less an accident because the remote cause was the idiopathic condition of the employee."

*Id.* at 494–95, 150 P.2d at 381–82, *quoting* 71 C.J. *Workmen's Compensation Acts* § 330 at 576 (1935) (emphasis added). *Accord* 1 A. Larson, *supra,* § 12.11. The Court emphasized that under the terms of the statute the accident need only occur "in the course of" the employment to be compensable.

■ In the present case, Georgas' position above the settling tank, a concrete structure containing a large pool of water six to eight feet deep, clearly was a position "increasing the dangerous effects of [an idiopathic] fall," and Georgas was in the course of his employment at the time of the fall. He was on his employer's premises during lunch hour, in a place he was not forbidden to be, apparently getting fresh air or a drink of water. Under these circumstances we hold that the idiopathic fall doctrine enunciated in *Tavey* applies.[4]

Kennecott argues that the evidence is insufficient to show that Georgas suffered a heart attack and then fell into the tank. It states:

> The finding ... was predicated on speculation. From the evidence in the record, it could have been conjectured also that decedent tripped or stumbled, that he was pushed or, indeed, that he jumped into the No. 9 settling tank.

■ Our standard of review of the Industrial Commission's findings of fact is determined by statute and is well-settled. We are limited to determining whether those findings are supported by substantial evidence. U.C.A., 1953, § 35–4–10(i); *Salt Lake City Corp. v. Department of Employment Security*, Utah, 657 P.2d 1312 (1982). *See also Utah Department of Administrative Services v. Public Service Commission*, Utah, 658 P.2d 601, 608–09 (1983).

■ In the present case, substantial evidence supports the inference that Georgas suffered a heart attack and fell into the pool. Furthermore, even if Georgas had, as Kennecott suggests, tripped, fallen into the tank, drowned, and while drowning suffered a heart attack, the result would be the same. *See Scott v. Y.M.C.A.*, 195 Neb. 746, 240 N.W.2d 587 (1976).

---

4. This case does not present the question, and therefore we need not decide whether an idiopathic fall to level ground and resulting injuries are compensable. *Compare, e.g., Williams v. Industrial Commission*, 38 Ill.2d 593, 232 N.E.2d 744 (1967) (recovery for fall to level floor denied), *with Lovett v. Gore Newspapers Co.*, Fla., 419 So.2d 306 (1982) (recovery allowed).

Kennecott's suggestion that the decedent "jumped" into the tank is not consistent with the testimony at the hearing, which showed that the decedent was in good spirits and going about his business as usual that day. Moreover, Kennecott offers no direct evidence that Georgas committed suicide or any evidence to rebut the usual presumption that an unexplained death is not caused by suicide. 1 A. Larson, *The Law of Workmen's Compensation* § 10.32 at 3–103 (1982); Annot., 5 A.L.R. 1680 (1920); 36 A.L.R. 397 (1925).

Affirmed.

HALL, C.J., and HOWE, OAKS and DURHAM, JJ., concur.