**2021 UT App 42**

# THE UTAH COURT OF APPEALS

LILLIAN ACKLEY,
Petitioner,

*v.*

LABOR COMMISSION AND LOWE'S,
Respondents.

Opinion
No. 20190806-CA
Filed April 15, 2021

Original Proceeding in this Court

Stony Olsen and Michael G. Belnap, Attorneys
for Petitioner

Mark D. Dean and Kristy L. Bertelsen, Attorneys for
Respondent Lowe's

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGE RYAN M. HARRIS and SENIOR JUDGE KATE
APPLEBY concurred.[1]

CHRISTIANSEN FORSTER, Judge:

¶1 Lillian Ackley challenges the denial of workers'
compensation benefits, asserting that the Utah Labor
Commission (Commission) erred when it determined that she
failed to show that her workplace activities constituted the legal
cause of her injuries. She argues that the Commission should
have evaluated her accident and injury as an idiopathic fall. We
agree with Ackley, set aside the Commission's decision, and

---

1. Senior Judge Kate Appleby began work on this case as an
active member of the Utah Court of Appeals. She completed her
work as a senior judge sitting by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

instruct it to revisit Ackley's claim under the idiopathic fall doctrine.

BACKGROUND

¶2    While working in the paint department near a key-making machine at Lowe's, a home improvement store, in December 2014, Ackley was attaching a sticker to a hammer that was to be placed on a shelf. She had a ganglion cyst on the third finger of her right hand, a condition she had been diagnosed with in 2010.[2] As Ackley was holding the hammer with her right hand, the tool started to slip, and she grasped it more tightly, causing extreme pain. She lost consciousness and fell down, hitting her head and shoulders on the concrete floor.[3] Following the accident, Ackley was diagnosed with a closed head injury, a torn rotator cuff in her right shoulder, a non-healing scalp lesion, hearing loss, and left-shoulder pain. Ackley had surgery to repair her torn rotator cuff, and the injury to her ear eventually prompted the need for a hearing aid. Doctors who evaluated Ackley agreed that the fall led to the injuries identified above. After an evaluation, the Lowe's medical consultant did not specify the cause of Ackley's fall but opined that certain medications she was taking may have caused dizziness.

---

2. "Ganglion cysts are noncancerous lumps that most commonly develop along the tendons or joints of [an individual's] wrists or hands. . . . Ganglion cysts are typically round or oval and are filled with a jellylike fluid. . . . Ganglion cysts can be painful if they press on a nearby nerve." *Ganglion cyst*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/ganglion-cyst/symptoms-causes/syc-20351156 [https://perma.cc/4B3L-KM7N].

3. Ackley also reported that a "small piece of metal," which she believed was debris that had fallen on the floor from the key-making machine, was extracted from her scalp at a later date.

¶3 In April 2018, Ackley filed a claim for benefits with the Commission, alleging that her work activities led to her injuries. Lowe's did not dispute that she fell and was injured at work but argued that the fall was caused by a preexisting condition—the rupture of the ganglion cyst. Citing *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), Lowe's argued that Ackley's claim for benefits was "contingent on her demonstrating that her work activities leading up to her fall not only triggered the fall, but also involved extraordinary and unusual exertion."

¶4 After a hearing, an administrative law judge (ALJ) found that Ackley was injured when she gripped the hammer and experienced intense pain associated with irritation to the ganglion cyst, causing her to black out and fall. The ALJ agreed with Lowe's that under *Allen*, Ackley bore the burden of demonstrating that her workplace activities both medically and legally caused the injuries for which she sought workers' compensation benefits. *See id.* at 25, 27 (explaining that "[t]o meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition" and that "[u]nder the medical cause test, the claimant must show by evidence, opinion, or otherwise that the stress, strain, or exertion required by his or her occupation led to the resulting injury or disability"). The ALJ concluded that although Ackley had shown medical causation, she failed to demonstrate legal causation because the exertion of gripping a hammer is "both usual and ordinary" and "comparable to the exertion associated with typical nonemployment activities." Accordingly, the ALJ denied Ackley's claim for benefits.

¶5 Ackley filed a motion for review of the ALJ's decision with the Commission. She argued that the ALJ erred in focusing only on the act of gripping the hammer as the cause of her injuries rather than the entirety of the accident:

> The industrial accident encompasses the entire event, not just the initial impetus. Indeed, if just the initial impetus, such as gripping a hammer or pressing a button, were the only events considered and an injured worker had to prove legal and medical causation for the initial impetus only and not the resulting events or injuries, then hardly any injured worker would ever recover.

The Commission rejected Ackley's arguments and affirmed the ALJ's decision, stating that "the absence of a legal causal connection between Ms. Ackley's employment and the intense right-hand pain she cited as the reason for losing consciousness and falling to the floor severs any causal connection between her work activity of gripping the hammer and her subsequent injuries from falling." The Commission also rejected the applicability of the idiopathic fall doctrine to Ackley's claim, noting that the doctrine requires a worker to fall "because of strictly idiopathic factors rather than a pre-existing condition aggravated by a work activity." *See* 1 Lex K. Larson, *Larson's Workers' Compensation Law* § 7.04[1][b] (2020) (explaining that an idiopathic fall is one caused by an employee's preexisting internal weakness or disease).[4]

¶6     Ackley filed a motion for reconsideration. Citing *Tavey v. Industrial Commission*, 150 P.2d 379 (Utah 1944), the seminal Utah case for the idiopathic fall doctrine, for the proposition that an injury sustained by an employee who becomes dizzy or unconscious and falls is compensable, Ackley urged the Commission to reconsider its decision "because Utah courts

---

4. The Workers' Compensation Act does not define "idiopathic." But the dictionary defines "idiopathic" as "arising spontaneously or from an obscure or unknown cause" or as "peculiar to the individual." *See Idiopathic*, Webster's Third Int'l Dictionary (2002).

have stated that a fall, regardless of the cause of the fall, is an accident by itself." In its order denying this motion, the Commission noted that "even though Ms. Ackley did not clearly raise the idiopathic fall doctrine in her motion for review, the Commission still considered such theory as part of its analysis and addressed it." The Commission reiterated that Ackley's act of gripping the hammer did not involve "unusual or extraordinary exertion" sufficient "to serve as a legal connection between [Ackley's] injuries and employment": "The cause of the fall was idiopathic in nature as it was due to risk personal to Ms. Ackley rather than an unusual or extraordinary exertion required by her employment." But even though the Commission described the fall as idiopathic, it proceeded to consider Ackley's injury by analyzing whether it was caused by work-related exertion. Ultimately, the Commission determined that any increased risk of injury Ackley faced was because of her ganglion cyst and not because of any workplace requirement. "[T]he work-related element of gripping the hammer was ultimately deemed insufficient to causally connect Ms. Ackley's fall to her employment because the increased risk of injury was supplied by her pre-existing right hand condition rather than workplace factors." Ackley now seeks review of the Commission's decision.

ISSUE AND STANDARD OF REVIEW

¶7 On review we address only one issue: whether the Commission erred in rejecting the applicability of the idiopathic fall doctrine to Ackley's workplace accident.[5] She argues that the

---

5. On judicial review, the Commission contends that Ackley did not timely raise the applicability of the idiopathic fall doctrine. We disagree. Even if Ackley did not clearly raise the issue in her initial motion for review, she definitely raised the issue in her first motion for reconsideration, and the Commission ruled on

(continued…)

Commission erred in applying *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), and instead should have applied the idiopathic fall doctrine and concluded that she established the requisite legal causal link between her employment and her injuries. "Whether the . . . Commission correctly or incorrectly denied benefits is a traditional mixed question of law and fact." *Intercontinental Hotels Group v. Utah Labor Comm'n*, 2019 UT 55, ¶ 6, 448 P.3d 1270 (quotation simplified). However, the ultimate question posed here is the legal effect of the facts. And in the context of a legal-cause analysis in fall cases, the legal effect of a given set of facts depends on whether the injury was caused by an employee's employment and employs "an objective legal standard that we are in a better position to analyze than the Commission." *Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 40, 308 P.3d 461. Thus, our review is non-deferential. *See id*. ¶¶ 40, 48.[6]

---

(…continued)

that argument on its merits. Accordingly, we perceive no preservation or timeliness problems in the manner in which Ackley brought the issue to the Commission's attention.

6. Ackley also argues that the Commission erred in refusing to consider her fall as an accident regardless of cause. While Ackley articulates this as a separate issue, it is in fact an alternative formulation of her idiopathic fall argument. But as we explain, in idiopathic fall situations, an employee must demonstrate a causal connection between employment and injury. We therefore reject this claim on the merits. Ackley also argues that the Commission violated the Utah Constitution in applying the heightened standard of legal causation articulated in *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), to her claim. Because we conclude that the Commission erred by not applying the idiopathic fall doctrine and set aside the Commission's

(continued…)

ANALYSIS

I. To be compensable, workplace injuries must result from an accident arising out of and in the course of employment.

¶8    Ackley argues the Commission erred when it denied her claim for compensation benefits under the Utah Workers' Compensation Act. An injured employee is entitled to benefits if the employee is "injured . . . by accident arising out of and in the course of the employee's employment." *See* Utah Code Ann. § 34A-2-401(1) (LexisNexis 2019). Thus, the statute sets forth two prerequisites to establish entitlement to benefits. First, the employee bears the burden of proving he or she was injured "by accident." *See id.* Second, the language "arising out of and in the course of the employee's employment," *see id.*, requires the employee to show "a causal connection between the injury and the employment," *see Allen v. Industrial Comm'n*, 729 P.2d 15, 18 (Utah 1986).

¶9    Our supreme court has clarified that the phrase "'arising out of' . . . requires that an accident be caused, in some sense, by an employee's employment." *Intercontinental Hotels Group v. Utah Labor Comm'n*, 2019 UT 55, ¶ 9, 448 P.3d 1270. That is, an "injury [is] compensable [if] it occurred while the employee engaged in an activity connected to the employee's work responsibilities." *Id.* ¶ 16. Furthermore, our supreme court has interpreted "arising out of the employment" as referring "to the origin or cause of the injury." *Id.* ¶ 9–10 (quotation simplified).

¶10    As to the "course of employment," our supreme court has stated that "an accident occurs in the course of employment if it occurs in the time, place, and circumstances typical of the

_____

(…continued)
decision on that basis, we need not address Ackley's constitutional argument.

employee's employment." *Id.* ¶ 23 (quotation simplified). "To be embraced within the ambit of 'course of employment,' the injury must be received while the employee is carrying on the work which he [or she] is called upon to perform or doing some act incidental thereto." *Black v. McDonald's of Layton*, 733 P.2d 154, 156 (Utah 1987); *accord Intercontinental Hotels*, 2019 UT 55, ¶ 23.

¶11　Here, there is no dispute that Ackley sustained an injury by accident in the course of her employment with Lowe's. A fall has long been accepted as the kind of unusual event that qualifies as an "accident." *See Allen*, 729 P.2d at 22 ("[A]n accident is an unexpected or unintended occurrence that may be *either* the cause *or* the result of an injury."); *see also Tavey v. Industrial Comm'n*, 150 P.2d 379, 381 (Utah 1944) ("'Accident' is usually taken to mean an unforeseen happening or unexpected mishap."). And as the Commission's order affirming the ALJ's decision stated, "It seems clear from the record that Ms. Ackley's head, left-ear, and shoulder injuries were accidental and that they occurred in the course of her employment because she was working for Lowe's at the time."

¶12　The crucial issue on appeal then is whether Ackley can establish that the injuries she sustained from falling to the floor *arose out of* her employment with Lowe's. *See* Utah Code Ann. § 34A-2-401(1). And this question turns on whether there is a "causal connection" between Ackley's injury and her employment. *Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 44, 308 P.3d 461. In other words, "[t]he general rule concerning causation is that an employee cannot recover for a physiological malfunction which is not job-induced and which could have happened as easily away from work as at work." *Kennecott Corp. v. Industrial Comm'n*, 675 P.2d 1187, 1191 (Utah 1983). Because the employer must bear the cost for an injured worker, it follows that there must be some causal connection between the employment and the injury; the injury must have had its origin in some risk incident to or connected with the employment or

have followed from it as a natural consequence. *See Intercontinental Hotels*, 2019 UT 55, ¶ 9 (stating that the accident must have been "caused, in some sense, by an employee's employment"); *see also Hernando County School Board v. Dokoupil*, 667 So. 2d 275, 277 (Fla. Dist. Ct. App. 1995) ("The fact that the claimant was in the course and scope of his employment when he fell is insufficient; there must be some finding that the employment created an increased risk of the fall itself or of the injuries which resulted.").

¶13    With respect to the causal connection, our supreme court has adopted a two-part test that further requires a claimant to establish that the conditions or activities of employment "were both the medical cause and the legal cause" of the injury. *See Murray*, 2013 UT 38, ¶ 45. Medical causation "requires that the claimant prove the disability is medically the result of an exertion or injury," *Allen*, 729 P.2d at 27, and legal causation requires proof that "an injury arose out of [and] in the course of employment," *id*. at 25; *see also infra* note 9. In this case, medical causation is not at issue as there is no dispute that Ackley's right- and left-shoulder injuries, closed head injury, left-ear injury—including hearing loss—and non-healing head wound were medically caused by her shoulders and head hitting the concrete floor. But the parties dispute whether the existence of her cyst and the workplace conditions at Lowe's were the legal cause of Ackley's injuries.

## II. Legal causation standards for workplace falls differ depending on the cause of the fall.

¶14    The ALJ and the Commission each analyzed Ackley's claim for benefits under *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), in which our supreme court discussed the standard for assessing legal causation in cases where a worker has a preexisting condition. But although Ackley's cyst may have been a preexisting condition that she brought with her to the workplace, Ackley is not seeking benefits for any impairment

or injury to her hand caused by gripping the hammer.[7] Rather, she is seeking benefits for the shoulder, head, and ear injuries caused by her fall. As explained below, workplace falls may stem from several different causes, and the proper legal causation analysis in workplace fall cases differs from the legal causation analysis applied in other cases.

¶15    *Allen*'s legal cause inquiry focuses on whether a workplace activity or exertion caused or contributed to the injury or impairment. If the employee suffers from a preexisting condition or has a preexisting injury, the employee must show that employment activity "contributed something substantial to increase the risk [the employee] already faced in everyday life because of [his or] her condition." *See id*. at 25. That is, the employee must demonstrate an "additional element of risk in the workplace [that] is usually supplied by an exertion greater than that undertaken in normal, everyday life. This extra exertion serves to offset the preexisting condition of the employee as a likely cause of the injury . . . ." *Id.*; *see also Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 21, 345 P.3d 1242 ("This heightened showing of legal cause is necessary to distinguish those injuries which coincidentally occur at work because a

---

7. Indeed, if Ackley were seeking benefits for any injuries caused to her hand as a result of the rupture of the ganglion cyst, the legal causation analysis for those injuries would be different from the legal causation analysis for the injuries she sustained as a result of the fall. With regard to the hand injuries, the question would be whether gripping a hammer constituted an unusual or extraordinary exertion not typically encountered in everyday life. *See Allen*, 729 P.2d at 25–26. The Commission determined that it did not, and Ackley does not challenge that determination. At oral argument, Ackley's counsel acknowledged that injury to her hand was not part of her claim for benefits and conceded that insofar as it was, that injury would have to be analyzed under *Allen*.

preexisting condition results in symptoms which appear during work hours without any enhancement from the workplace." (quotation simplified)).

¶16 But in cases involving workplace falls, as opposed to other workplace injuries, our supreme court has established a different framework for demonstrating legal causation—a framework that differs depending on the cause of the fall. If the fall is entirely caused by workplace conditions, rather than by unknown reasons or by reasons personal to the worker, then the requisite causal link, including legal causation, clearly exists. But if the fall is caused by unknown reasons—an unexplained fall—or by reasons personal to the worker—an idiopathic fall—other rules apply.

¶17 A fall originating from an unknown source is deemed "unexplained," and resulting injuries are generally compensable. *See Intercontinental Hotels Group v. Utah Labor Comm'n*, 2019 UT 55, ¶ 14, 448 P.3d 1270 ("[I]n unexplained falls at work, employment constitutes a condition out of which the accident arises because that particular accident would not have happened where and when it did if employment obligations had not required the employee to be walking where he or she was walking at the time of the accident."). Indeed, where an employee falls while at work "for no discoverable reason, the causation requirement is satisfied because the particular injury would not have happened if the employee had not been engaged upon an employment errand at the time." *Id.* (quotation simplified); *see also Ross v. Charlotte County Public Schools*, 100 So. 3d 781, 782 (Fla. Dist. Ct. App. 2012) ("[W]here an unexplained fall happens while [an employee] is actively engaged in the duties of employment, and where there is no other established basis for the fall, the causal relationship between the employment and the accident is met." (quotation simplified)). That is, in unexplained fall cases, we can infer that the fall resulted from an employment-related condition and not from the employee's personal condition.

¶18 "A different rule applies, however, where because of some non-occupational internal weakness (such as a heart attack, epileptic [seizure], or fainting spell), an employee falls and sustains an injury from the fall." *Kennecott Corp. v. Industrial Comm'n*, 675 P.2d 1187, 1191–92 (Utah 1983). A fall originating from an internal or personal weakness or condition of the employee is deemed "idiopathic," and the compensability of injuries resulting from such a fall depends on whether employment conditions increased the dangerous effects of the fall. *See id.* If the employment does not increase the severity of the injuries resulting from the fall, then there is no causal link between employment and the injury, and the injuries are not compensable. *See id.*

¶19 The idiopathic fall doctrine was first developed in Utah jurisprudence in *Tavey v. Industrial Commission*, 150 P.2d 379 (Utah 1944). In that case, a bookstore employee had a "fainting spell" and, in falling to the floor, "struck her head against the lower shelf of a book case." *Id.* at 380 (quotation simplified). No evidence was presented to show that the fainting episode was brought on by the conditions of employment. *Id.* The commission denied compensation because "the injury was not the result of an accident arising out of or in the course of employment." *Id.* (quotation simplified). Our supreme court set aside the commission's decision, concluding that "[a]n injury sustained by an accidental fall is compensable, although the fall resulted from some disease." *Id.* at 382. The court reasoned that the employee had suffered an accident while working: "In the ordinary understanding of the term accident, it is certainly deemed an accident for a [worker] to unexpectedly fall and strike her head against the floor or some hard object. Accident is usually taken to mean an unforeseen happening or unexpected mishap." *Id.* at 381 (quotation simplified). In addition, it determined,

> Here, there was a fall and a striking of the head against a hard object. We hold that there was an

injury caused by accident, and that the plaintiff is entitled to compensation, regardless of the fact that the cause of the fall may have been physical weakness or illness unrelated to the duties or conditions of the employment. Compensation in Utah can not be denied merely because the remote cause of the injury was an idiopathic condition not due to the employment.

*Id.* (quotation simplified).[8]

¶20 The idiopathic fall doctrine was further developed some decades later in *Kennecott Corp. v. Industrial Commission*, 675 P.2d

---

8. Although *Tavey v. Industrial Commission*, 150 P.2d 379 (Utah 1944), appears to be the first recognition of the idiopathic fall doctrine by a Utah appellate court, the decision is not determinative of the question presented in this appeal. As explained *infra* note 9, the *Tavey* court examined the disjunctive statute and allowed recovery because Tavey could show she was injured "in the course of" her employment. *Id.* at 381 ("[O]ur statute requires that compensation be paid to a work[er] who is injured by accident in the course of his [or her] employment, without requiring that the injury or accident arise out of the employment . . . ."). Significantly, however, Chief Justice Wolfe's concurrence in *Tavey* appears to have recognized that to meet the "arising out of" employment prong, an employee would have to prove that "some hazard peculiar to the industry" caused or contributed to the injury: "If, except for the employment, the fall, though due to a cause not related to the employment, would not have carried the consequences it did, then causal connection is established between injury and employment, and the accidental injury arose out of the employment. The employment has subjected the work[er] to a special danger which in fact resulted in injury." *Id.* at 383 (Wolfe, C.J., concurring) (quotation simplified).

1187 (Utah 1983). In that case, a worker suffered a heart attack, fell into a settling tank, and drowned. *Id.* at 1189, 1192. Relying on the idiopathic fall doctrine articulated in *Tavey*, the administrative law judge awarded compensation. *Id.* at 1189. Our supreme court allowed the decision to stand, recognizing the "basic rule" that the "effects of [an idiopathic] fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle." *Id.* at 1192 (quotation simplified).[9]

---

9. In 1988, the Utah Legislature amended Utah Code section 34A-2-401(1) from the disjunctive "or" to the conjunctive "and." *Compare* Act of Mar. 13, 1919, ch. 63, § 1, 1919 Utah Laws 154, 158 ("Every employee . . . who is injured . . . by accident arising out of, *or* in the course of . . . employment . . . shall be paid . . . compensation . . . ." (emphasis added)), *with* Act of Mar. 14, 1988, ch. 116, § 1, 1988 Utah Laws 532, 532 ("Each employee . . . who is injured . . . by accident arising out of *and* in the course of . . . employment . . . shall be paid compensation . . . ." (emphasis added)). Importantly, *Tavey* and *Kennecott* were decided before the statute was amended, and in each case, our supreme court determined that the injuries sustained by the employees were compensable because the accidents occurred "in the course of" the employment. Under the terms of the statute at the time, satisfaction of only one of the requirements was sufficient. *See Tavey*, 150 P.2d at 382 ("An accidental injury, during the course of employment, from an unexplained cause, is compensable . . . ."); *Kennecott Corp. v. Industrial Comm'n*, 675 P.2d 1187, 1192 (Utah 1983) ("[U]nder the terms of the statute the accident need only occur 'in the course of' the employment to be compensable . . . , and [the employee] was in the course of his employment at the time of the fall."). The amendment to the conjunctive in the statute means that an employee must prove both "arising out of" and "in the course of" to be entitled to benefits. But our supreme

(continued…)

III. The idiopathic fall doctrine applies to Ackley's fall.

¶21 Here, the Commission and Ackley agree that the cause of her fall was a medical condition personal to her. In its order denying Ackley's motion to reconsider, the Commission explicitly recognized, "The cause of the fall was idiopathic in nature as it was due to risk personal to Ms. Ackley rather than an unusual or extraordinary exertion required by her employment."[10] We determine the Commission erred by

---

(…continued)
court, in applying the unexplained fall doctrine to the newer conjunctive statute, determined that the "arising out of" part of the statute was satisfied where the "particular injury would not have happened where and when it did but for [the employee's] obligation to appear at [the employer's] offices on the morning of the accident." *See Intercontinental Hotels Group v. Utah Labor Comm'n*, 2019 UT 55, ¶ 17, 448 P.3d 1270 (quotation simplified). If anything, the idiopathic fall doctrine requires a stronger causal link than that required by the unexplained fall doctrine—not only must the accident have occurred at work, but the employment conditions must also have contributed to the severity of the injuries sustained in the fall. We are therefore confident that the intervening change in the statute—from disjunctive to conjunctive—did not render inapplicable *Tavey* and *Kennecott* or the idiopathic fall doctrine espoused by those cases.

10. The Lowe's brief appears to disagree with the Commission's determination by stating, "[T]he accident was not caused from an idiopathic condition. Rather, the idiopathic condition arose after [Ackley] gripped the hammer." But we fail to see the logical significance of this distinction. Even if the idiopathic condition manifested itself after Ackley gripped the hammer, that condition (i.e., the ganglion cyst) nevertheless existed prior to her gripping the hammer.

applying the *Allen* standard rather than the idiopathic fall doctrine to these facts and by focusing on the exertion Ackley undertook in gripping the hammer rather than whether her work conditions increased the risk she would be injured when she fell.

¶22    In idiopathic workplace fall situations, there is no exertion to examine because the personal condition of the employee is what causes the fall. The affirmative employment contribution the employee is required to show is not the increased risk of injury because of the preexisting condition itself but that workplace or employment conditions aggravate the dangerous effects of a fall or the injuries that result from it. *See Kennecott Corp. v. Industrial Comm'n*, 675 P.2d 1187, 1192 (Utah 1983). Thus, the inquiry is whether a condition of employment increased the risk of injury. The reason to consider whether the workplace conditions enhanced the effects of a fall in the idiopathic context has much the same purpose as considering whether a preexisting condition caused the injury in the *Allen* context: To avoid making the employer a general insurer, the employee must show that something other than the preexisting condition caused the injury or that something about the employment conditions increased her risk of injury resulting from a fall. *See Allen v. Industrial Comm'n*, 729 P.2d 15, 27 (Utah 1986) (noting that the medical causation requirement prevents "an employer from becoming a general insurer" of its employees). Without this increased-risk requirement, an employer is potentially liable to compensate a worker for idiopathic-fall injuries entirely unrelated to employment.

¶23    But in idiopathic fall cases, consideration of an exertion is not part of the analysis precisely because the idiopathic fall doctrine presumes that something personal to the worker—rather than external work exertions—caused a worker to fall. Simply put, if a worker falls due to a greater than normal exertion at work, then that fall was not idiopathic in nature because the fall had a cause external to the worker, presumably

attributable to the working conditions. But that is not the case here, where the parties agree that Ackley fell in response to the pain created by the rupture of her ganglion cyst—a condition internal and personal to Ackley.

¶24　Moreover, Ackley's fall obviously was not unexplained. While working, she gripped a hammer, bursting her cyst and creating immense pain. She lost consciousness, fell to the floor, and suffered serious injury. Ackley's cyst was a preexisting personal condition—an idiopathic condition—that caused her fall. Thus, the cause of Ackley's fall was fully explained. Under these circumstances, the Commission should have analyzed the compensability of her injury using the idiopathic fall doctrine.

### IV. Whether work conditions added to the risk of injury is a question of fact requiring remand.

¶25　Thus, the question remaining is whether Lowe's placed Ackley in a position that increased the dangerous effects of a fall. In idiopathic fall cases, "injuries . . . ar[i]se out of employment because work conditions expose[] the employees to an added or increased risk of injury." *Illinois Consol. Tel. Co. v. Industrial Comm'n*, 732 N.E.2d 49, 54 (Ill. App. Ct. 2000) (Rakowski, J., concurring). If it can be shown that the conditions of Ackley's employment placed her at an increased risk of suffering injury from an idiopathic fall, then legal causation is satisfied because her injury arose out of her employment.

¶26　Lowe's argues that even if Ackley had an "had an idiopathic condition" that caused her to fall, she did not fall "in an area where [she] was at an increased risk of injury, such as near sharp corners, near heights, or in a moving vehicle." Citing *Kennecott Corp. v. Industrial Commission*, 675 P.2d 1187 (Utah 1983), and *Tavey v. Industrial Commission*, 150 P.2d 379 (Utah 1944), Lowe's attempts to distinguish Ackley's accident from the accidents described in those cases by pointing out that their situations involved, respectively, a settling tank and a bookshelf. Where Ackley sustained her injuries by falling to level ground,

Lowe's argues her fall does not meet the requirements of the idiopathic fall doctrine.[11]

¶27 The record contains conflicting information about whether Ackley fell to level ground and if other hazards were around her. Ackley fell when she was attaching stickers to merchandise that was presumably stored on shelving, a cart, or some other storage device. She was in the paint department, apparently near a key-making machine and likely near some type of merchandise display. But even if she was on level ground with no other hazards around her, we are not prepared to adopt a strict legal rule that idiopathic falls to level ground are not compensable. Rather, whether a fall to level ground presents

---

11. We note that the *Kennecott* court specifically stated, "This case does not present the question, and therefore we need not decide whether an idiopathic fall to level ground and resulting injuries are compensable." *Kennecott*, 675 P.2d at 1192 n.4. Lowe's also cites *Helf v. Industrial Commission*, 901 P.2d 1024 (Utah Ct. App. 1995), in support of the proposition that a fall to level ground is not compensable in idiopathic situations. But the analysis in *Helf* was limited to medical causation under *Allen* and examined whether "the stress, strain, or exertion required by [Helf's] occupation led to the resulting injury." *See id.* at 1026–27 (quotation simplified) ("We hold that the Industrial Commission did not err in its determination that Helf failed to establish, by a preponderance of the evidence, the medical causation portion of the *Allen* test."). In that case, this court did not discuss the applicability of the idiopathic fall doctrine, and the analysis does not appear to have focused on the connection between Helf's fall and his injuries; rather, it focused on whether Helf's personal conditions caused his fall. As Ackley points out, the narrow scope of the analysis in *Helf* makes it of limited value in this case where the Commission and the parties all agree that medical causation is satisfied because Ackley's work activities "caused her to fall and, in falling, to sustain injuries."

an added employment hazard is a factual question to be decided in the first instance.

¶28    While the workplace conditions were not determinative in *Tavey*, the court explicitly stated, "it is certainly deemed an accident for a [person] to unexpectedly fall and strike her head against the *floor* or some hard object." *Tavey*, 150 P.2d at 381 (emphasis added). And though the *Kennecott* court declined to "decide whether an idiopathic fall to level ground and resulting injuries are compensable," *see Kennecott*, 675 P.2d at 1192 n.4, the court did not outright reject compensability for idiopathic falls to level ground, and the manner in which the *Kennecott* court lists the conditions that might make a fall dangerous suggests that the conditions were offered as illustrative examples rather than an exhaustive list.[12] Whether the condition of a floor or the surrounding area posed an increased risk of injury or aggravated the effects of a fall thus presents a factual question not answered

---

12. It makes little sense to conclude, and our precedent does not require a determination, that if Ackley had hit her head on some shelving as she fell, then her claim could be compensable, but because she had the misfortune of falling all the way to the floor and striking her head on the concrete, she must be denied benefits as a matter of law. *See Harris v. Ohio Bureau of Workers' Comp.*, 690 N.E.2d 19, 22 (Ohio Ct. App. 1996) (Painter, J., dissenting) ("I am simply not willing to hold that one who hits his head on a picnic table in a lunchroom can recover, but if he falls all the way to the floor he is out of luck."). While a "distinct majority of jurisdictions . . . have denied compensation in level-fall cases, . . . [a] significant minority . . . make awards for idiopathic level-floor falls." 1 Lex K. Larson, *Larson's Workers' Compensation Law* § 9.01[4][a] (2019); *see also id.* § 9.01[4][e] ("One factual question that figures in a number of cases is whether, in a level-floor fall to a concrete, tile, or steel surface, the fact of hardness alone should suffice as the added employment hazard.").

by the Commission. *See Bluml v. Dee Jay's Inc.*, 920 N.W.2d 82, 90–91 (Iowa 2018) (stating that the conditions of a floor in idiopathic fall cases should be considered factually rather than legally because "the divergence of authority and the presence of dissenting opinions [on this issue] suggest that reasonable people can come to different conclusions"). Instead, the Commission incorrectly focused on the question of whether gripping the hammer was an unusual or extraordinary exertion that caused Ackley's injury. Given that the underlying question is really a factual one—that is, whether the conditions of employment increased the employee's risk—it makes sense for that question to be decided on a case-by-case basis by the Commission using the factual record. Accordingly, we determine that the question of whether employment conditions increased or aggravated an employee's risk of injury from idiopathic falls to level ground is a question to be decided by the Commission based on the particular facts of each case.

¶29　Thus, because the Commission determined that the cause of Ackley's accident was personal in nature, her fall should have been evaluated as an idiopathic fall, and the Commission should have examined whether the conditions of the floor and her surrounding work area contributed to the hazard of her fall and increased her risk of injury.

CONCLUSION

¶30　The Commission erred in not evaluating Ackley's claim under the idiopathic fall doctrine. Accordingly, we set aside its decision and remand with instructions for the Commission to reconsider Ackley's claim in a manner consistent with this opinion.

————